*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 07a0217p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

THOMAS M. KLEPSKY,

         *Plaintiff-Appellant,*

    *v.*

UNITED PARCEL SERVICE, INC.,

         *Defendant-Appellee.*

No. 05-4391

>

Appeal from the United States District Court
for the Northern District of Ohio.
No. 04-01683—Donald C. Nugent, District Judge.

Argued: November 28, 2006

Decided and Filed: June 12, 2007

Before: MARTIN and GUY, Circuit Judges; ROSE, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Robert E. Davis, ROBERT E. SWEENEY & ASSOCIATES, Cleveland, Ohio, for Appellant. Margaret M. Koesel, PORTER, WRIGHT, MORRIS & ARTHUR, Cleveland, Ohio, for Appellee. **ON BRIEF:** Robert E. Davis, ROBERT E. SWEENEY & ASSOCIATES, Cleveland, Ohio, for Appellant. Margaret M. Koesel, Nicole J. Quathamer, PORTER, WRIGHT, MORRIS & ARTHUR, Cleveland, Ohio, for Appellee.

_____

## OPINION

_____

BOYCE F. MARTIN, JR., Circuit Judge. Plaintiff Thomas Klepsky claimed that he was terminated from Defendant United Parcel Service ("UPS") in violation of the Ohio Whistleblower Protection Act and Ohio public policy. The district court granted UPS's motion for summary judgment. We now affirm that decision for the following reasons.

I.

The district court determined that the relevant facts were largely undisputed, and summarized them as follows:

_____

[*] The Honorable Thomas M. Rose, United States District Judge for the Southern District of Ohio, sitting by designation.

The lawsuit stems from Mr. Klepsky's termination in January of 2004. Mr. Klepsky was hired by United Parcel Services, Inc. ("UPS") as a seasonal driver in 1994. He began full time work in 1995. As part of the employment application process, Mr. Klepsky was required to undergo a U.S. Department of Transportation ("DOT") physical examination, and to fill out a medical history information form. The form expressly requires an applicant to "list all medications (including over-the-counter medications) used regularly or recently."

Mr. Klepsky had a past history of seizures and was, throughout his employment with UPS, taking Dilantin, an anti-seizure medication, on a daily basis. Mr. Klepsky did not disclose either of these facts on his medical history information form. Mr. Klepsky contends that during his original qualifying physical examination he told the doctor that he had suffered two seizures 10 or 11 years earlier. According to Mr. Klepsky, because the seizures occurred more than six months ago, the doctor said "don't even open up a can of worms," and so he did not disclose the past seizures on his form. There is no evidence that Mr. Klepsky advised the examining doctor that he was still taking Dilantin on a daily basis.

The information forms specifically state that "any deliberate false statement may be cause for disciplinary action up to and including termination." Mr. Klepsky also signed forms noting that "inaccurate, false or missing information" may invalidate his medical certification. A person with a history of seizures who takes anti-seizure medication is not medically qualified to drive under DOT regulations. 49 C.F.R. § 391.41(b)(8); The Advisory Criteria to 49 C.F.R. § 391.41(b)(8).

UPS became aware of Mr. Klepsky's daily use of Dilantin in November of 2003. The information was contained in records sent by Mr. Klepsky's doctor in connection with an unrelated medical leave of absence. Mr. Klepsky contends that UPS should have been aware of this information as early as August of 2002 because Dilantin was listed as one of his medications in worker's compensation records submitted to the company during that time frame. UPS admits that this record was in its possession but contends that because it was submitted with a request for payment, the medications listed were not reviewed or noted.

After receiving notice of Mr. Klepsky's Dilantin use, he was immediately advised that he could not drive, and UPS requested that he submit additional information from his doctor. This information was received in late January of 2004. Upon review of the records, UPS decided to terminate Mr. Klepsky for dishonesty. He was discharged on January 29, 2004.

Mr. Klepsky contends that he was fired in retaliation for various complaints he made against UPS over the years. These complaints include reports made in spring of 1999 to the Ohio State Highway Patrol and to the Middleburg Heights Police alleging that a UPS supervisor had forged his signature on a DOT application for a triples[1] permit card. Mr. Klepsky also submitted several complaints internally at UPS relating to allegations that equipment was faulty; hazardous materials documents were in the wrong place in the trucks; and soft-sided trailers were not being loaded properly. There is no evidence of any such complaints being filed after fall of 2000. More than a year and a half after the last recorded complaint, Mr. Klepsky injured

---

[1]"Triples" are three-trailer rigs that are considered "long combination vehicles." Special permits must be obtained from DOT in order to drive triples on the Ohio Turnpike.

his rotator cuff and took a year long leave of absence which was covered by worker's compensation. Mr. Klepsky was fired a little over six months after he returned from his medical leave.

Mr. Klepsky grieved his discharge to the Union. The [Union's] state panel upheld his termination.

Mr. Klepsky filed suit against UPS in the Cuyahoga County Court of Common Pleas charging two counts. The first count alleged a violation of Ohio's Whistleblower's Act, O.R.C. §§ 4113.51 and 4113.52. The second count alleges wrongful discharge in violation of Ohio public policy. UPS removed the case to this federal court, claiming that Mr. Klepsky's state-law claims were preempted by the Labor Management Relations Act, 29 U.S.C. § 185.

The district court granted UPS's motion for summary judgment, ruling that Klepsky did not meet the requirements of the Whistleblower's Protection Act, and that he could not bring a cause of action under Ohio's public policy exception to the employment-at-will doctrine because he was a union member. Klepsky now appeals from that judgment.

II.

This Court reviews a district court's grant of summary judgment de novo, and must view "the facts and any inferences that can be drawn from those facts . . . in the light most favorable to the non-moving party." *Bennett v. City of Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1996)).

### A. Federal Subject Matter Jurisdiction

Prior to oral argument, we asked the parties to be prepared to discuss the issue of federal subject matter jurisdiction. Although neither party raised the issue in its briefs, "subject matter jurisdiction may be raised sua sponte at any juncture because a federal court lacks authority to hear a case without subject matter jurisdiction." *Thornton v. Southwest Detroit Hosp.*, 895 F.2d 1131, 1133 (6th Cir. 1990). Klepsky's claims do not raise a federal cause of action under 28 U.S.C. § 1331, and neither party pled the presence of diversity jurisdiction under 28 U.S.C. § 1332. Instead, UPS removed the case to federal court in reliance on 29 U.S.C. § 185 (section 301 of the Labor Management Relations Act), alleging that the dispute required interpretation of the Collective Bargaining Agreement ("CBA") to which Klepsky was subject as a Teamsters union member and a UPS employee. Klepsky filed a motion for remand, which was denied without an opinion by the district court. In its summary judgment opinion, the district court explained that "UPS removed the case to this federal court, claiming that Mr. Klepsky's state-law claims were preempted by the Labor Management Relations Act, [("LMRA")] 29 U.S.C. § 185." D. Ct. Op. at 7.

Under the "well-pleaded complaint rule," the presence of federal jurisdiction turns on whether "a plaintiff's properly pleaded complaint presents a federal question on its face." *Smolarek v. Chrysler Corp.*, 879 F.2d 1326, 1329 (6th Cir. 1989) (en banc). The possibility that federal law might be raised in defense is generally not enough to justify removal to federal court. *Id.* Thus, if a plaintiff chooses to only seek relief under state-law causes of action, as Klepsky has done here, he usually can intentionally avoid federal jurisdiction. *Id.* An exception to this rule exists, however, where federal law completely preempts state law on the relevant subject matter, as the LMRA does in cases that require interpretation of a CBA. *Id.* Thus, removal to the district court was proper only if Klepsky's state law claims are indeed preempted by the LMRA.

The Supreme Court has cautioned strongly against upholding removal jurisdiction based solely on the defendant's interjection of a defense based on the CBA:

> a defendant cannot, merely by injecting a federal question into an action that asserts what is plainly a state-law claim, transform the action into one arising under federal law, thereby selecting the forum in which the claim shall be litigated. If a defendant could do so, the plaintiff would be master of nothing.

*Caterpillar, Inc. v. Williams*, 482 U.S. 386, 399 (1987). As UPS correctly noted in its Notice of Removal, a claim that requires interpretation of a collective bargaining agreement is completely preempted, and subject to removal to federal court under section 301. *Smolarek*, 879 F.2d at 1326. But "not every dispute . . . tangentially involving a provision of a collective-bargaining agreement, is preempted by § 301." *Lingle v. Norge Div. of Magic Chef*, 486 U.S. 399, 413 (1988). In the context of state-law tort claims that could potentially be preempted by the Act, the proper focus is on "whether the [state-law cause of action] confers nonnegotiable state-law rights on employers or employees independent of any right established by contract, or, instead, whether evaluation of the [state-law] claim is inextricably intertwined with consideration of the terms of the labor contract." *Smolarek,* 879 F.2d at 1330 (quoting *Allis-Chalmers v. Lueck,* 471 U.S. 202, 213 (1985)).

Relying on Supreme Court precedent, this Court has articulated a two-part test in evaluating claims of complete preemption. We first look to whether "resolving the state-law claim would require interpretation of the terms of the collective bargaining agreement," and, alternatively, "whether the rights claimed by the plaintiff were created by the collective bargaining agreement, or instead by state law." *Mattis v. Massman*, 355 F.3d 902, 906 (6th Cir. 2004). "In short, if a state-law claim fails either of these two requirements, it is preempted by § 301." *Id.* This Court has also noted that "where a plaintiff's state-law claims cannot be directly connected to the terms of the CBA, they are not preempted," and that "merely consulting a CBA in the course of adjudicating state law claims is not enough." *Valinski v. Edison*, 197 Fed. App'x 403, 409 (6th Cir. 2006).

Klepsky's claims present a close jurisdictional question under these standards. On the one hand, the causes of action under which he seeks relief do not require interpretation of the CBA on their own. Initially, the existence or the terms of a CBA bear no connection to an Ohio Whistleblower Protection Act claim. Union membership can be a relevant defense to a wrongful termination claim based on Ohio public policy, Klepsky's second cause of action. *See Haynes v. Zoological Soc'y*, 652 N.E.2d 948, 951 (Ohio 1995) (explaining that wrongful termination in violation of public policy is an exception to the employment at will doctrine, and therefore unavailable to union members who are not employees at will). Even so, this relevance would not appear to be sufficient for preemption on its own, as the cause of action actually accounts for federal preemption (perhaps unintentionally) and avoids interfering with federal law by only applying to non-union members. Simply because the Ohio courts have considered union membership in limiting a state law cause of action does not mean that preemption is required. In fact, this limitation would counter against preemption, as it prevents the state-law cause of action from affecting the uniform interpretation of federal labor law, which is the driving rationale behind the doctrine of complete preemption.

Although the causes of action that Klepsky pursues do not support preemption on their own, the *relief* he seeks is a different question, and does support preemption here. In addition to seeking compensatory damages, punitive damages, attorneys' fees, and costs and expenses, Klepsky's complaint requests "reinstatement." We find that this single request is enough to support preemption here, as it would require interpretation of the terms of the CBA, and implicates a right created under the CBA. After all, Ohio follows the traditional common law doctrine of employment-at-will, *see Haynes*, 652 N.E.2d at 951 (explaining the public policy exceptions to employment-at-will) and the equitable doctrine that specific performance is generally unavailable to enforce employment agreements. *See Felch v. Findlay College*, 200 N.E.2d 353, 358-60 (Ohio App. 1963). Even if he does not explicitly rely on terms of the CBA pertaining to reinstatement, his request for reinstatement would, at a minimum, seem to implicate such rights and require interpretation of the CBA. For this

reason, we find that preemption exists under the LMRA, and that removal based on federal jurisdiction was proper here.

## B. Klepsky's Public Policy Claim under *Greeley*.

As mentioned above, Ohio recognizes a judicially created public policy exception to the employment-at-will doctrine, which was first set out in *Greeley v. Miami Valley Maintenance Contractors, Inc.*, 551 N.E.2d 981 (Ohio 1990). In *Greeley*, the Ohio Supreme Court stated that "the right of employers to terminate employment at will for 'any cause' no longer includes the discharge of an employee where the discharge is in violation of a statute and thereby contravenes public policy," and recognized a cause of action for such terminations. 551 N.E.2d at 987. In *Haynes*, a subsequent case, the Ohio Supreme Court clarified the doctrine by stating that "*Greeley* provides an exception to the employment-at-will doctrine. Thus, . . . in order for an employee to bring a cause of action pursuant to *Greeley*, that employee must have been an employee at will." 652 N.E.2d at 951. The Plaintiff in *Haynes* could not bring a *Greeley* cause of action because she was a member of a union, and "the terms of her employment relationship were governed by a collective bargaining agreement." *Id.*

Klepsky argues that *Haynes* was overruled by a subsequent Ohio case, *Coolidge v. Riverdale Local Sch. Dist.*, 797 N.E.2d 61 (Ohio 2003). *Coolidge* involved the termination of a public school teacher who was discharged after receiving temporary total disability benefits and taking an extended leave from teaching. The plaintiff was not an at-will-employee, as her contract with the school was governed by statute. The *Coolidge* court held that "an employee who is receiving [total temporary disability] compensation pursuant to R.C. 4123.56 may not be discharged solely on the basis of absenteeism or inability to work, when the absence or inability to work is directly related to an allowed condition."

In a recent case, this Court has rejected the proposition that *Coolidge* overruled *Haynes* altogether, noting instead that "*Coolidge*'s holding is tightly tethered to the unique policy considerations of Ohio's workers' compensation statute," and that "[n]othing in *Coolidge* abrogated the requirement of at-will employment for violation of public policy claims outside of the workers' compensation context." *Kusens v. Pascal Co.*, 448 F.3d 349, 365-366 (6th Cir. 2006). Klepsky cites an Ohio Court of Appeals case for the argument that *Coolidge* overruled *Haynes*, but the opinion merely describes the decision in *Coolidge* without discussing its impact on *Haynes* or providing any other reasoning that would suggest the reversal of *Haynes*. *See Haren v. Superior Dairy, Inc.*, 2004 Ohio 4436 (Ohio Ct. App. 2004). We remain unconvinced that *Haynes* has been overruled by the Ohio courts. Because Klepsky's *Greeley* claim is brought outside of the workers' compensation context, rendering *Coolidge* inapplicable, and because Klepsky is not an at-will employee, we affirm the district court's dismissal of Klepsky's claim pursuant to *Haynes*.

## C. Klepsky's Whistleblower Protection Act Claim

In rejecting Klepsky's whistleblower claim, the district court found that Klepsky was not entitled to protection under the statute, as he failed to notify a UPS superior of his forgery allegation and he failed to claim that he believed the safety complaints he made amounted to a violation of criminal law. The district court also ruled that there was no causal connection between any protected activity engaged in by Klepsky and his eventual discharge, due largely to the temporal gap between Klepsky's complaints and his discharge. Further, the district court ruled that even if Klepsky could make out a prima facie case under the statute, UPS had a legitimate non-retaliatory justification for terminating him based on his misrepresentations in the medical history forms.

In order to establish a violation of the Ohio whistleblower statute, a "plaintiff must first make a prima facie case by showing that 1) he or she engaged in activity which would bring him or her

under the protection of the statute, 2) was subject to an adverse employment action and 3) there was a causal link between the protected activity and the adverse employment action." *Wood v. Dorcas*, 757 N.E.2d 17, 23 (Ohio Ct. App. 2001). Klepsky was clearly subject to an adverse employment action when he was fired from UPS, and thus only the first and third elements of the prima facie case are in dispute. If a plaintiff is able to make out a prima facie case, "the burden shifts to the employer to articulate some legitimate, non-retaliatory reason for the action taken. Should the employer be able to state a non-retaliatory reason for the action taken, the burden then returns to the plaintiff to come forward with some evidence to show that the employer's stated reason was, in fact, pretext." *Id*. at 24.

Even assuming for the sake of argument that Klepsky made out a prima facie case, we agree with the district court that UPS had a legitimate, non-retaliatory reason to fire Klepsky, which he failed to prove was pretextual. Klepsky was taking an anti-seizure medication called Dilantin the entire time he worked at UPS. Both because of his drug use and his past seizures he was prohibited from operating UPS trucks pursuant to Department of Transportation regulations. Further, Klepsky failed to report the medication on five separate medical history forms during his time at UPS.

Klepsky concedes these points, and only counters them with an assertion that a doctor told him it was unnecessary to report his seizure history, given the time that had passed since he had suffered from seizures. This does not explain the failure to report the use of the medicine, an independent omission from the failure to report the seizures. Moreover, Klepsky's explanations to the courts of why he was dishonest do not diminish UPS's showing of a legitimate basis for his discharge, even if we are sympathetic to the situation he was in. Klepsky's violation of federal regulations and dishonesty on the medical forms amount to a legitimate, non-retaliatory basis for his dismissal.

Klepsky's attempts to show that this proffered reason for his termination was mere pretext are not availing. He claims that he did not intend to deceive UPS, that he was not discharged immediately, that the management employee who forged Klepsky's signature on a DOT application in 1999 was not fired, and that a UPS employee told him not to report his past seizures. First, whether or not Mr. Klepsky intended to deceive UPS, he omitted serious, material information from his medical history form, a document which itself provided for disciplinary action for false statements. Klepsky raises no claim that he did not understand the medical history form, and his intent has little to do with whether UPS used this omission as a pretext for his dismissal. Additionally, although Klepsky was *fired* two months after UPS's discovery of his Dilantin use, he was *suspended* immediately from driving, pending an investigation. He was then terminated at the end of the investigation. This time lapse does nothing to undermine UPS's proffered basis for firing him.

Next, the fact that Louis Godbolt, the management employee who forged Klepsky's signature, was not fired has little bearing on the company's discipline of Klepsky. To begin with, Godbolt was disciplined through the loss of financial bonuses for his actions. Furthermore, his actions were not the same as Klepsky's — although both involved dishonesty, Klepsky's dishonesty went to the very root of his employability and his qualification to drive trucks. Further, Godbolt forged Klepsky's signature for the permit to drive triples over Klepsky's objection that he "did not feel comfortable driving triples." While this may have been a well-placed concern that UPS would have been wise to respect, Klepsky's discomfort had a less immediate bearing on whether he could safely drive trucks than did his blatant violation of DOT regulations. Godbolt's forgery may have indicated that he was not trustworthy, but it did not have the same safety implications as Klepsky's dishonest conduct. The two infractions were not sufficiently similar to raise an implication of pretext.

Finally, Klepsky's claim that a doctor allegedly under contract with UPS told him that he did not have to report his past seizures does little to establish pretext. Klepsky does not claim that the

doctor told him not to report his use of Dilantin, and this amounted to a separate, significant omission, as a driver's use of Dilantin also violated the safety regulations. Further, the district court found that the doctor was not under contract with UPS, based on an undisputed factual showing. Even if the doctor gave Klepsky bad advice and told Klepsky to lie on the form, UPS could determine that such conduct was still unacceptable. On its own, the bad advice is insufficient to establish the ultimate question of whether UPS used the false medical report as a pretext for firing Klepsky to hide its illegal intentions.

Because we find that UPS offered a legitimate, non-retaliatory reason for Klepsky's discharge, we decline to reach the closer question of whether he made out a prima facie case of retaliation.

III.

The district court's entry of summary judgment on behalf of UPS is affirmed.