*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 08a0004p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

HOLLY L. STAUNCH,

       *Plaintiff-Appellant,*

    *v.*

CONTINENTAL AIRLINES, INC.,

       *Defendant-Appellee.*

No. 07-3315

>

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 06-01011—James S. Gwin, District Judge.

Argued: November 29, 2007

Decided and Filed: January 7, 2008

Before: KENNEDY, MARTIN, and CLAY, Circuit Judges.

---

## COUNSEL

**ARGUED:** Martin S. Hume, Youngstown, Ohio, for Appellant. Janette M. Louard, LITTLER MENDELSON, Cleveland, Ohio, for Appellee. **ON BRIEF:** Martin S. Hume, Youngstown, Ohio, for Appellant. Janette M. Louard, Lisa A. Cottle, LITTLER MENDELSON, Cleveland, Ohio, for Appellee.

---

## OPINION

---

KENNEDY, Circuit Judge. Plaintiff Holly Staunch appeals the district court's grant of summary judgment to Defendant Continental Airlines, Inc. on her claims for interference and retaliation under the Family Medical Leave Act of 1993 ("FMLA"), pregnancy discrimination in violation of Section 4112.02(A) of the Ohio Revised Code, and wrongful termination in violation of Ohio's public policy against pregnancy discrimination. Because we find that Staunch was not an "eligible employee" under the FMLA and her state law claims are without merit, we **AFFIRM** the district court's grant of summary judgment to Continental.

## BACKGROUND

Continental hired Staunch as a flight attendant in May 1998. For most of her employment, Staunch worked as a reserve flight attendant. As such, she was on-call and could receive flight assignments up to two hours prior to departure.

In January 2002, Staunch discovered she was pregnant and requested intermittent leave from Continental, which it granted. In April 2002, Staunch called-in sick to work on at least four occasions after Continental had assigned her in-flight duties. On May 1, 2002, Staunch was placed on maternity leave. She remained out until the end of January 2003.

In May 2003, Staunch had two "Sick After Assignment" ("SKAA") incidents and two or more "Sick" ("SK") incidents. Based on these absences, Staunch's supervisor, Kimberly Piszczek, set up a meeting to discuss Staunch's attendance record and other job performance issues. During the meeting, which took place on September 18, 2003,[1] Piszczek issued Staunch a "Termination Warning." Staunch was informed that any additional infractions during the next eighteen months would result in termination of her employment. On September 21, 2003, Continental sent Staunch a "Termination Warning" letter that read, in part:

> A review of your 12-month active work history indicate[s] the following instances of unacceptable attendance.
>
>      Sick September 28 – October 7, 2001 (Issued Informal Conversation)
>      Sick call after Assignment Dec. 6, 2001
>      Sick Dec. 28, 2001 – Jan. 2, 2002 (Issued Written Warning)
>      Sick Feb. 24, 2002 / Sick Call After Assignment Feb. 25, 2002
>      Short Notice Sick March 28, 2002
>      Sick call after Assignment April 10, 11, 12, 2002
>      Sick Call After Assignment April 27, 2002
>      Sick Call After Assignment May 6,  2003
>      Sick May 7, 2003
>      Sick Call After Assignment May 8, 2003
>      Sick May 10-12, 2003
>
> . . .
>
> As a result of these facts and in light of your work history, which have been considered in arriving at a decision in this matter, you are placed on Termination Warning effective September 18, 2003 for 18 months of active service.
>
> . . . [W]hen a Flight attendant reaches Termination Warning the Flight Attendant will be on a single track for discipline purposes. Any infraction in Job Performance or Dependability may lead to termination of employment.

On December 28 and 29, 2003, Staunch incurred a holiday sick instance without producing a doctor's note. Although her holiday sick call could have subjected her to termination, Continental chose to have an informal conversation with Staunch rather than end her employment.

On April 22, 2004, it was discovered that Staunch had flown a number of days over the course of almost five months without a compliant safety manual. Specifically, Staunch had failed to update her manual with Revision 23, a December 10, 2003 Federal Air Regulations("FAR") safety and operations update. Supervisor Piszczek spoke with Staunch and, ultimately, allowed her to fly on that day.

On April 29, 2004, Piszczek and union representatives met with Staunch to inform her that Continental had decided to terminate her employment on the basis of her job performance and

---

[1]The meeting occurred on this date and not earlier because it was Staunch's first day back at work following a non-medical leave of absence that began in mid-May 2003.

dependability violations.  Following the meeting, Piszczek sent Staunch a termination letter stating in part:

> Thank you for meeting with me on April 29, 2004 to discuss a Job Performance related issue. . . . A review of your 12-month active work history indicates the following:
>
>> Sick Call After assignment April 10, 11, 12, 2002
>> Sick Call After Assignment April 27, 2002
>> Sick Call After Assignment May 6, 2003
>> Sick May 7, 2003
>> Sick Call After Assignment May 8, 2003
>> Sick May 10-12, 2003 (Issued Termination Warning)
>> Sick December 28-29 (Informal Conversation)
>> Infraction of FAR 121.137 Missing Revision 23 dated December 10, 2003
>
> Since the issue of termination warning you have incurred a sick instance and a job performance instance.
> At your check in on April 22, 2002, it was determined by me that you did not have revision  23 in your manual.  Nor was your signature on the Revision Summary Record.  You admitted during our meeting you were not sure if Revision 23 was in your manual.  Your work schedule shows you have flown 5 months in non-compliance.  I explained to you that either one of the above single issues could have led to termination of your employment.
>
> As a result of the facts listed above and in light of your work history, which have been considered in arriving at a decision in this matter you employment with Continental Airlines is terminated effective April 29, 2004.

Staunch grieved her discharge through Continental's arbitration procedure.  Her grievance was denied.  She also filed a charge of discrimination with the Ohio Civil Rights Commission, which issued a no probable cause determination.  Thereafter, Staunch filed the present action against Continental alleging (1) FMLA interference; (2) FMLA retaliation; (3) pregnancy discrimination; and (4) wrongful discharge in violation of public policy.

The district court granted Continental's motion for summary judgment and dismissed Staunch's claims.  Staunch filed this timely appeal of the district court's decision.

## ANALYSIS

We review a district court's grant of summary judgment *de novo*. *Bryson v. Regis Corp.*, 498 F.3d 561, 569 (6th Cir. 2007).  Summary judgment is appropriate if the evidence shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c).  When reviewing a motion for summary judgment, we must view the facts and draw all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Once the moving party demonstrates an absence of a genuine issue of material fact as to an essential element of the non-moving party's case, the non-moving party must set forth specific facts showing a triable issue.  *Id.*  It is not sufficient for the party opposing summary judgment to present a "mere scintilla" of evidence; the evidence must be such that a reasonable jury could find in her favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## I.

Staunch claims that Continental both interfered with her FMLA rights and retaliated against her for exercising her FMLA rights. The FMLA guarantees "eligible employees" twelve weeks of unpaid leave during any twelve month period for certain family or medical events, including childbirth. 29 U.S.C. § 2612(a)(1) (2000). The statute defines "eligible employee" as "an employee who has been employed . . . for at least 12 months by the employer with respect to whom leave is requested . . . and . . . for at least 1,250 hours of service with such employer during the previous 12-month period." 29 U.S.C. § 2611(2)(A). The statute makes it unlawful for employers to interfere with, restrain, or deny these rights, 29 U.S.C. § 2615(a)(1), and to retaliate against employees who exercise them, 29 U.S.C. § 2615(a)(2); violators are subject to consequential damages and appropriate equitable relief. 29 U.S.C. § 2617(a)(1).

As an initial matter, a FMLA claim cannot be maintained by a plaintiff who was not an "eligible employee." *Humenny v. Genex Corp., Inc.*, 390 F.3d 901, 905-06 (6th Cir. 2004). The parties dispute whether Staunch qualified as an "eligible employee" under the FMLA when she sought leave related to her pregnancy beginning on January 21, 2002. Continental asserts that Staunch did not work 1,250 hours in the twelve months preceding her request for intermittent leave. Continental proffered the affidavit of Mary Sturchio, Manager of Human Resources, with an attached chart calculating Staunch's total hours worked for Continental from January 21, 2001 through January 22, 2002 as 1,127 hours and 41 minutes. Sturchio based her calculations on Continental records and factored in flight time, check-in time, ground time, de-brief time, and training time. Staunch maintains that she worked more than 1,250 hours. To support her contention, Staunch offered her sworn affidavit stating that she worked 2,323 hours and 52 minutes during the twelve months preceding her request for leave. Her calculations were based on her own recollection of the hours she had worked and were displayed in an undated list of task and hours. The district court did not decide whether Staunch had worked the requisite 1,250 hours for Continental; rather, it assumed that she was an eligible employee and granted summary judgment to Continental because her interference and retaliation claims had no basis in law.

To determine if an employee has worked the requisite 1,250 hours for his employer, the FMLA directs courts to examine the principles for calculating hours of service established under the Fair Labor Standards Act ("FLSA"). 29 U.S.C. § 2611(2)(C).[2] "The determining factor is the *number of hours an employee has worked* for the employer within the meaning of the FLSA. . . . Any accurate accounting of *actual hours worked* under FLSA's principles may be used." 29 C.F.R. § 825.110(c) (emphasis added). If the "employer does not maintain an accurate record of hours worked by an employee . . . the employer has the burden of showing that the employee has not worked the requisite hours." *Id.*

In the present case, Staunch argues that Continental did not "maintain" an accurate record of her actual hours worked. Staunch does not dispute that Continental kept proper and accurate time records; rather, she argues that because compensation for flight attendants is based on predetermined flight hours, Continental's time records do not accurately reflect her actual time worked. In her deposition, Janie DeVito, Continental's Inflight Director, acknowledged that flight attendants are required to perform additional duties outside of the "block hours" from the time the main cabin door on the aircraft is closed upon departure to the time it is opened upon arrival at the destination. These duties include reading items placed in employees' files, reviewing briefing books, attending training sessions, meeting with supervisors for disciplinary meetings, going through customs on international

---

[2]The regulations set forth at 29 C.F.R. § 785 discuss the principles involved in determining what constitutes working time for purposes of FLSA, as well as our analysis of FMLA's hours of service requirement. The regulations direct a finding that "all hours are hours worked which the employee is required to give his employer." 29 C.F.R. § 785.1 (citing *Armour & Co. v. Wantock*, 323 U.S. 126 (1944); *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944)).

flights, and waiting onboard a plane while passengers disembark ("de-brief time"). Because some of these duties necessarily must take place outside of the flight hours on which compensation is based, we find that Continental did not "maintain" a record of the actual hours spent performing these duties. Thus, Continental has the burden to prove that Staunch did not work the requisite 1,250 hours.

We find that Continental has clearly demonstrated that Staunch did not work 1,250 hours in the twelve months preceding her request for leave. In Mary Sturchio's Affidavit, Continental established Staunch's actual hours worked as 1,128 by compiling the flight attendant pay registers detailing each flight Staunch worked and adding time required by the collective bargaining agreement for check-in, de-briefing, training time, and ground time. Staunch attempts to refute Continental's calculations with an undated list of tasks and hours she compiled based on her own recollection. But Staunch failed to present evidence of specific days and hours that she worked performing these uncompensated tasks. This undated, generalized list does not set forth specific facts showing a genuine issue for trial.

Moreover, when viewed in light of the record evidence, Staunch's general allegations regarding the additional hours she worked prove to be inflated and unsupported. For example, flight attendants are required to check-in anywhere from 45 minutes to 1 hour and 15 minutes before the flight depending on the size of the plane to which they are assigned. In its calculations, Continental credited Staunch the appropriate amount of check-in time for each of the approximately 140 flights she worked during the relevant twelve-month period. Nevertheless, Staunch alleged that she was entitled to an additional 250 hours of check-in time based on her own estimations. Continental, however, had already included that time in its calculation of hours worked. Moreover, even if Staunch is allotted one hour of check-in time as she alleges for each of the flights she worked, she would only be entitled to 140 hours of check-in time and not the 250 hours she estimated. Similarly, Staunch claimed that she was due an additional five hours for "customs/immigration processing in Canada, Mexico, Caribbean." But Continental's flight records show that during the relevant time period, Staunch made only two trips to Canada, and none to Mexico or the Caribbean. Any time Staunch spent in customs in Canada is covered by check-in time and was included in Continental's calculation of actual hours worked.

Therefore, we find that Staunch has failed to present sufficient evidence to create a genuine issue of fact as to the number of hours she actually worked during the twelve-month period preceding her request for leave. Continental's evidence showing that Staunch worked less than the requisite 1,250 hours stands unrefuted. Thus, Staunch was not an "eligible employee" under the FMLA and her FMLA claims fail as a matter of law.

## II.

Staunch also claims that Continental discriminated against her because of her pregnancy in violation of Ohio law. Ohio Revised Code Section 4112.02(A), like Title VII of the Civil Rights Act of 1974, prohibits an employer from discriminating against an employee because of the employee's sex. This includes discriminating on the basis of "pregnancy, any illness arising out of and occurring during the course of pregnancy, childbirth, or related medical conditions." OHIO REV. CODE § 4112.01(B). The Ohio Supreme Court has held that "federal case law interpreting Title VII . . . is generally applicable to cases alleging violations of R.C. Chapter 4112." *Kocak v. Cmty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 471-72 (6th Cir. 2005) (quoting *Plumbers & Steamfitters Joint Apprenticeship Comm'n v. Ohio Civil Rights Comm'n*, 421 N.E.2d 128, 131 (Ohio 1981)). Thus, because Staunch has failed to present direct evidence of pregnancy discrimination, her claim is subject to the *McDonnell Douglas* burden-shifting framework applied in Title VII discrimination claims. *Tysinger v. Police Dep't of the City of Zanesville*, 463 F.3d 569, 572-73 (6th Cir. 2006). At the outset, Staunch has the burden of presenting evidence from which a reasonable

jury could conclude that: (1) she was pregnant; (2) she was qualified to perform her job; (3) she was subjected to an adverse employment decision; and (4) there was a nexus between her pregnancy and the adverse employment decision. *Id.* at 573. If Staunch satisfies her *prima facie* showing, then the burden shifts to Continental to offer evidence of a legitimate, non-discriminatory reason for the adverse employment action. *Id.* at 576. Once Continental proffers such a reason, the burden shifts back to Staunch to show that the proffered reason was a pretext for retaliation. *Id.*

While Staunch has arguably presented sufficient evidence to establish her *prima facie* case, she has failed to present any evidence to create a genuine issue that Continental's legitimate, non-discriminatory reason for her termination was a pretext for pregnancy discrimination. Staunch may demonstrate pretext by showing that Continental's proffered reasons (1) have no basis in fact; (2) did not actually motive the action; or (3) were insufficient to warrant the action. *Tysinger*, 463 F.3d at 576. Staunch does not dispute that the reasons advanced by Continental for her discharge have a basis in fact because she admits that she had accumulated non-pregnancy related absences and her flight manual was not up to date. Staunch argues, though, that her non-pregnancy absences were insufficient to warrant the decision to place her on Termination Warning, and had she not been on Termination Warning when she was found flying with a non-compliant manual in violation of company policy and federal regulations, she would not have been terminated.

Staunch claims that because Continental's attendance policy provided that an absence or incident is defined as any specific period of absence from work for a single reason, her absence from work May 6–12, 2003, which she alleges was for a single reason, would only count as one sick incident. She argues that this would not have been sufficient to place her on Termination Warning without the inclusion of her pregnancy related absences. Therefore, Staunch argues that Continental's explanation that she was placed on Termination Warning for her non-pregnancy absences was pretextual.

While Continental's Inflight Director, Janie Devito, acknowledged that it is Continental's policy to count a sick incident as any specific period of absence from work for a single reason, she also explained that "[o]ne sick call instance may include a number of days if the employee identifies those days when calling in sick. Each new call results in a new sick instance." In her deposition, Staunch testified that she called in sick after receiving an assignment on May 6. When questioned, she could not recall whether she had let Continental know at that time that she would be absent the following day or whether she called in sick again on May 7. Staunch admitted, however, that she called in sick after assignment on May 8. Again, she could not recall making a phone call to Continental on May 10, 11, or 12 to let them know that she was still sick. Tellingly, when asked if she had called in on May 6 and told Continental she would be absent from work until May 12, Staunch hedged before eventually admitting that she had not done so. Therefore, according to Continental's policy, Staunch incurred at least two SKAA incidents and two or more SK incidents in May 2003.

These absences, coupled with the fact that Staunch had previously received a Written Warning for attendance, were sufficient to place Staunch on Termination Warning. Staunch knew that her employment would be terminated if she incurred one more infraction during the eighteen-month period in which her Termination Warning was in effect. Despite this, Staunch incurred another SK incident on December 28–29, 2003, without providing a doctor's note. The fact that Continental chose to give Staunch a final reprieve is strong evidence that it's final decision to terminate her employment in April 2004 for flying with a non-compliant safety manual was not a pretext for pregnancy discrimination. Thus, we find that Staunch has failed to present any evidence to create a genuine issue that Continental's legitimate, non-discriminatory reason for her termination was insufficient to warrant the action.

Therefore, Continental is entitled to summary judgment on Staunch's pregnancy discrimination claim.

## III.

Finally, Staunch argues that Continental wrongfully terminated her in violation of Ohio's public policy against pregnancy discrimination. We find, however, that Staunch cannot maintain a claim for wrongful discharge in violation of Ohio's public policy because she was not employed at will, but was employed pursuant to the terms of a collective bargaining agreement. *Haynes v. Zoological Soc'y of Cincinnati*, 652 N.E.2d 948, 951 (Ohio 1995) ("[I]n order for an employee to bring a cause of action pursuant to *Greely* [i.e., a claim for wrongful discharge in violation of public policy], that employee must have been an employee at will."); *see also Klepsky v. United Parcel Serv., Inc.*, 489 F.3d 264, 270-71 (6th Cir. 2007) (finding plaintiff, a union member, could not maintain a *Greely* claim because he was not an employee at will). Even if she could plead such a claim, Staunch's failure to present sufficient evidence to support the essential elements of her pregnancy discrimination claim likewise precludes her ability to establish a public policy claim. *Godfredson v. Hess & Clark, Inc.*, 173 F.3d 365, 375 (6th Cir. 1999); *DeSanzo v. Titanium Metals Corp.*, 351 F. Supp.2d 769, 782-83 (S.D. Ohio 2005) ("A claim for wrongful discharge in violation of public policy embodied in statute prohibiting discriminatory practices will fail if the underlying discrimination claim fails."). Therefore, we find that Continental is entitled to summary judgment on Staunch's claim for wrongful termination in violation of Ohio public policy.

## CONCLUSION

For the aforementioned reasons, we **AFFIRM** the district court's decision.