**Anthony H. SZOSTEK, Appellant**

v.

**DREXEL UNIVERSITY.**

No. 14–1107.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) Oct. 20, 2014.

Opinion filed Jan. 7, 2015.

William J. Fox, Esq., Philadelphia, PA, for Plaintiff–Appellant.

Tiffani L. McDonough, Esq., Obermayer, Rebmann, Maxwell & Hippel, Philadelphia, PA, for Defendant–Appellee.

Before: AMBRO, FUENTES, and NYGAARD, Circuit Judges.

OPINION *

AMBRO, Circuit Judge.

Anthony Szostek brought an action against Drexel University for retaliation and interference claims under the Family Medical Leave Act, 29 U.S.C. § 2601 *et seq.*, and for discrimination under the Americans With Disabilities Act, 42 U.S.C. § 12101 *et seq.* The District Court granted summary judgment in favor of Drexel. Szostek appeals the District Court's denial of his motion for reconsideration of the order granting summary judgment. We disagree and thus affirm.

**I.**

Drexel hired Szostek as a custodian in 1997 and promoted him to Commercial Driver in 2007. Szostek took intermittent FMLA leave in 2002 and 2006 for the birth of his two children. Each period of leave lasted one year. In February 2010 Szostek applied for and received intermittent leave for depression and anxiety. Two information packages were mailed to him in February and May that indicated his intermittent leave would last six months. Szostek claims he received neither package because he was living in a trailer and was unable to receive mail. He further maintains he believed the intermittent FMLA leave would last one year.

For much of July and August, Szostek was out of work on workers' compensation. During this period, his six months of

FMLA expired. Around the same time, Drexel began using The Hartford to administer its FMLA program. Drexel sent Szostek information in the mail regarding changes in FMLA procedures, but he claims he did not receive the package. Under the new system, employees were required to notify both Drexel and The Hartford each time they called out on FMLA leave.

From October 21 to November 3, Szostek called out on FMLA leave at least seven days. On November 4 his supervisor, Sharukh Nayar, informed Szostek he was no longer on FMLA leave. Nayar instructed him to reenroll in FMLA and try to get the days backdated. According to Szostek, Nayar admitted to misinforming him at an earlier date that his FMLA period had not yet expired. Francis Maahs, Nayar's supervisor, "continuously" urged Szostek throughout November to try to get the absences backdated. Szostek claims that he tried to do so, but The Hartford denied his requests as untimely.

After the meeting with Nayar, Szostek called The Hartford to reapply for FMLA benefits. During that phone call, a Hartford employee asked if Szostek had any prior dates he wanted to report. He did not report his absences from October 21 to November 3. The employee informed Szostek that he must notify both Drexel and The Hartford each time he called out on FMLA. Szostek testified that he had difficulty hearing due to loud noises around him.

Between November 8 and November 24, Szostek called out on FMLA for at least five days but failed to notify The Hartford. He claims he only learned he was required to call out to both Drexel and The Hart-

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

ford on December 30 during a conversation with a coworker. Thereafter, Szostek properly notified both entities when taking FMLA leave.

In December, The Hartford determined that Szostek was not eligible for FMLA for the absences between October 21 and November 24 because he failed to provide it·timely notification. Maahs' supervisor, Michael Smith, sent an email to The Hartford to confirm the decision. Later that day, Szostek was issued seven employee-counseling forms indicating he was under discipline for violating Drexel's Leave–Without–Pay Policy. Under these circumstances, an internal Drexel policy requires a progressive disciplinary process. Drexel took the unusual course of holding discipline in abeyance to give Szostek an opportunity to try to backdate his uncovered absences. It did not impose discipline until after The Hartford confirmed that Szostek's absences would not be covered by the FMLA.

On January 5, 2011, Drexel terminated Szostek's employment for two reasons: (1) Maahs and Smith believed that Szostek engaged in "proven dishonesty" by calling out on FMLA leave from October 21 to November 3 when he was not eligible, and (2) Szostek violated Drexel's Leave–Without–Pay Policy because he had no paid time off to cover the absences denied for FMLA.

## II.

The District Court had jurisdiction under 28 U.S.C. § 1331. We have jurisdiction under 28 U.S.C. § 1291. An appeal of a denial of a motion for reconsideration "brings up the underlying judgment for review." *McAlister v. Sentry Ins. Co.*, 958 F.2d 550, 552–53 (3d Cir.1992). We there-

fore review the order granting summary judgment. We do so by applying the same test as the District Court. Summary judgment "is appropriate when the moving party is entitled to judgment as a matter of law and there is no genuine issue of material fact." *Hampton v. Borough of Tinton Falls Police Dep't*, 98 F.3d 107, 112 (3d Cir.1996).

## III.

■ Szostek argues that the District Court erred by finding no genuine issues of material fact regarding his FMLA retaliation claim. We disagree.

FMLA retaliation claims based on circumstantial evidence are guided by the burden-shifting framework from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). We assume without deciding that Szostek met his initial burden of showing evidence sufficient to support his case. *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 302 (3d Cir.2012). The burden of production next shifts to Drexel to "articulate some legitimate, nondiscriminatory reason" for the allegedly retaliatory act. *Id.* Drexel meets this minimal burden because it claims Szostek was terminated for committing "proven dishonesty" and for violating the Leave–Without–Pay Policy.

To survive summary judgment, Szostek must show that these reasons were pretextual, that is, they were not the real reason for the termination. He must submit evidence that "casts sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a factfinder could reasonably conclude that each reason was a fabrication."[1] *Fuentes v. Perskie*, 32 F.3d 759, 762 (3d Cir.1994).

---

1. A plaintiff may also survive summary judgment by providing evidence "to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action" *Id.* Szostek does not appear to take this route.

Szostek "cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is ... not whether the employer is wise, shrewd, prudent, or competent." *Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1108 (3d Cir.1997) (internal quotations omitted). Instead, he must "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could rationally find them unworthy of credence." *Id.* at 1108–1109 (internal quotations omitted).

Maahs and Smith testified that Szostek was terminated because they believed he had dishonestly called out on FMLA when he was no longer eligible. If so, then this was no mere pretext for firing him.

To show pretext, Szostek first argues that Drexel violated its own progressive discipline policy by holding his discipline in abeyance. But the policy does not require progressive discipline for terminations based on proven dishonesty. *Logan v. Liberty Healthcare Corp.*, 416 F.3d 877, 883 (8th Cir.2005).

Szostek next argues he was not dishonest because he actually believed his FMLA period had not expired. But this is not enough, for he must provide sufficient facts for a rational fact finder to conclude that Smith and Maahs did not believe he was dishonest for seeking FMLA benefits when he was no longer eligible. *Macon v. United Parcel Serv., Inc.*, 743 F.3d 708, 716–18 (10th Cir.2014); *Argyropoulos v. City of Alton*, 539 F.3d 724, 737 (7th Cir. 2008); *Klepsky v. United Parcel Serv., Inc.*, 489 F.3d 264, 272–73 (6th Cir.2007). Szostek provides no such evidence.[2]

Szostek also fails to refute Drexel's explanation that he was terminated for violating the Leave–Without–Pay Policy. Szostek's FMLA period expired in August 2010, and he did not reapply until November 4 of that year. Thus his absences from October 21 to November 3 were not eligible for FMLA benefits. His absences from November 8 to November 24 were also not covered by FMLA because he failed to notify both Drexel and The Hartford that he was taking FMLA leave. The District Court properly found that Szostek violated Drexel's Leave–Without–Pay Policy because he could not cover these absences.

Once again, Szostek argues that the discipline in abeyance shows pretext. He contends that a rational fact finder could infer that Drexel intentionally withheld discipline after each violation so that he would rack up enough violations to merit termination. But Drexel held discipline in abeyance to allow Szostek the opportunity to postdate his absences from before November 4. Maahs and Smith waited to impose discipline until after they confirmed that The Hartford denied FMLA leave for those absences. And Szostek does not argue his supervisors learned of any subsequent violations before his final violation on November 24. If anything, the record suggests they did not. Szostek first violated the FMLA policy on October 21st. His supervisors learned about this violation two weeks later, around November 4. This delay resulted from Szostek's failure to notify The Hartford he was calling out on FMLA. After the meeting on November 4, Szostek violated the FMLA procedures on November 8. His last violation was on November 24, just over two

2. Neither Maahs nor Smith were at the November 4 meeting where Nayar admitted to previously telling Szostek he was still on FMLA. Szostek does not dispute Maahs' testimony that he was unaware Nayar gave this false information. Szostek does not argue that Smith was aware either.

**54**

weeks later. Once again, Szostek failed to call The Hartford for each of these days. Absent any evidence to the contrary, Szostek's supervisors likely learned about the violations after it was too late.

■ Szostek raises two further unpersuasive claims. First, he argues that Drexel interfered with his FMLA rights by requiring that he notify both Drexel and The Hartford each time he called out on leave. We have upheld significantly more burdensome reporting requirements. *See Callison v. City of Phila.*, 430 F.3d 117, 121 (3d Cir.2005) (holding that employers may require employees on FMLA to call a Sick Leave Hotline when leaving home during work hours). He also raises several new arguments that Drexel interfered with his FMLA rights by not giving him proper notice. He provides no reason for failing to present these arguments to the District Court. Thus they are waived. Second, Szostek claims his termination constitutes discrimination under the Americans With Disabilities Act. But he provides no facts to support a connection between his disability and termination. As such, we cannot conclude there was discrimination.

\* \* \* \* \* \*

For these reasons, we affirm.