RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 12a0404p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
———————————

DANA PAUL,

        *Plaintiff-Appellant*,

    *v.*

No. 11-4217

KAISER FOUNDATION HEALTH PLAN OF OHIO,

        *Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 1:10-cv-1594—Lesley Brooks Wells, District Judge.

Argued: October 2, 2012

Decided and Filed: December 11, 2012

Before: MERRITT, McKEAGUE and STRANCH, Circuit Judges.

———————————

**COUNSEL**

**ARGUED:** Daniel P. Petrov, THORMAN & HARDIN-LEVINE CO., LPA, Cleveland, Ohio, for Appellant. George S. Crisci, ZASHIN & RICH CO., L.P.A., Cleveland, Ohio, for Appellee. **ON BRIEF:** Daniel P. Petrov, THORMAN & HARDIN-LEVINE CO., LPA, Cleveland, Ohio, for Appellant. George S. Crisci, Patrick M. Watts, ZASHIN & RICH CO., L.P.A., Cleveland, Ohio, for Appellee.

———————————

**OPINION**

———————————

McKEAGUE, Circuit Judge. Plaintiff Dana Paul brought state law claims for disability discrimination and retaliation against her former employer after her 12-year employment as a CT Technologist came to an end. Defendant Kaiser Foundation Health Plan of Ohio removed the action from state court to federal court on the basis of complete preemption under the Labor Management Relations Act, contending plaintiff's claims implicated rights under the collective bargaining agreement. Defendant also

1

moved for judgment on the pleadings, contending that plaintiff's attempt to enforce rights under the governing collective bargaining agreement triggered application of the mandatory arbitration requirement, and that plaintiff failed to meet this requirement by submitting her grievance to arbitration. The district court (1) denied plaintiff's motion to remand to state court, finding removal proper; and (2) granted defendant's motion to dismiss on the pleadings for plaintiff's failure to submit to mandatory arbitration. Plaintiff timely appealed both rulings. For the reasons that follow, we reverse the denial of plaintiff's motion to remand and vacate the district court's judgment on the pleadings.

## I. BACKGROUND

The facts relevant to this appeal are not disputed. Plaintiff Dana Paul was hired by Kaiser Foundation Health Plan of Ohio ("Kaiser") in 1997 to work as a Radiology Technologist. In 2002, she began working as a CT Technologist. Plaintiff suffered work-related injuries that required an anterior cervical spine fusion in December 2006. Major follow-up surgical procedures were performed in February 2008, including a repair of the anterior fusion, a subsequent posterior fusion, and a bone graft. Thereafter, plaintiff contends that she returned to work as a CT Technologist and was able to perform all the essential functions of her position.

In late 2008, Kaiser decided to combine the duties previously performed by Radiology Technologists and CT Technologists under one job description, "CT/Rad Technologist." Implementation of this change resulted in elimination of the CT Technologist position and required the current CT Technologists to undergo orientation in performing diagnostic imaging services. Plaintiff understood that her newly expanded duties as a CT/Rad Technologist would be physically demanding, requiring her to lift and turn and position disabled and elderly patients for diagnostic x-rays. Since her back surgeries, plaintiff did not believe she could safely perform such physically demanding duties. In February 2009, she filed a "Request for Accommodation" with the Kaiser Human Resources Department, explaining that she could not work in the diagnostic area without assistance. She impliedly asked to be exempted from assignment to shifts when she would be the only CT/Rad Technologist on duty. Plaintiff had been working second

shift (4:00 p.m. to 12:00 midnight), including occasional weekend duty, and had not been required to work alone.

Kaiser appears to have initially interpreted plaintiff's request as one to exempt her from all diagnostic x-ray duties. Kaiser denied such request, but remained willing to consider other potential accommodations in an "interactive discussion." Meanwhile, April 8, 2009 was the effective date of the creation of the new CT/Rad Technologist position and concurrent elimination of plaintiff's former CT Technologist position. The interactive discussion ensued on April 20, 2009 and was followed by a letter from Senior Human Resources consultant Kathleen Dolbin explaining to plaintiff that, in response to her request for accommodation, Kaiser would be working with the employees' union to temporarily change her assignment to the day shift (i.e., 8:00 a.m. to 4:00 p.m.) and exempt her from the weekend duty rotation. Dolbin sought the union's approval of these changes, but approval was reportedly denied because the union was unwilling to infringe other employees' seniority rights under the collective bargaining agreement ("CBA"). The three other CT/Rad Technologists at the Parma Medical Center were asked if there was a volunteer who would prefer working the second shift, including routine weekend duty. All three declined.

Another interactive discussion was conducted on August 12, 2009. This discussion resulted in a letter advising plaintiff that Kaiser's efforts to change her assignment from second shift to first shift and exempt her from weekend duty had been unsuccessful. It further advised that Kaiser was unable to continue the accommodation it had temporarily granted, i.e., allowing plaintiff to continue performing exclusively the duties of her former CT Technologist position. Plaintiff was thus placed on medical leave of absence and was invited to apply for other available positions for which she might be qualified.

Plaintiff's treating physician, Timothy Moore, M.D., subsequently submitted statements to Kaiser attempting to make clear his opinion that Dana Paul remained capable of performing the duties of the CT/Rad Technologist position, as long as the assistance of another CT/Rad Technologist would be reasonably available when she

worked in the diagnostic x-ray area. Nonetheless, Kaiser advised plaintiff on September 21, 2009, that she was placed on unpaid status. Plaintiff pursued her remedies under the collective bargaining agreement, but her grievance was denied at step one, step two and step three. Plaintiff did not submit her grievance to arbitration, which would have been the next step available under the CBA.

Plaintiff commenced this action against her employer in the Cuyahoga County Court of Common Pleas on June 9, 2010. The complaint asserted claims, by an Ohio citizen against an Ohio corporation, for disability-based discrimination and retaliation, in violation of Ohio's civil rights law, O.R.C. § 4112.02. Kaiser removed the action to the United States District Court for the Northern District of Ohio, contending that plaintiff's state law claims implicated the terms and conditions of her employment, would necessitate interpretation of rights under the CBA, and were therefore subject to complete preemption by federal law, the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a).

Once in federal court, Kaiser immediately moved for judgment on the pleadings and plaintiff moved for remand to state court. The district court ruled in Kaiser's favor on both motions. The court held that removal was proper based on complete preemption, and held that Kaiser was entitled to judgment on the pleadings because plaintiff had, by undisputedly failing to submit her grievance to arbitration, failed to comply with a mandatory prerequisite to relief under the CBA. Plaintiff timely filed notice of appeal.

## II. ANALYSIS

### A. Complete Preemption

#### 1. *Standard of Review*

In support of her motion to remand, plaintiff contended that her complaint, setting forth state law claims by an Ohio citizen against an Ohio corporation, presented no grounds for removal to federal court. She insisted that her claims did not invoke any right under the CBA, did not request relief under the CBA, and did not require

interpretation of the CBA. She maintained that the doctrine of complete preemption was erroneously invoked to justify removal.

The district court correctly recognized the governing legal standards. These standards are summarized in *Kitzmann v. Local 619-M Graphic Communications Conference*, 415 F. App'x 714, 716-18 (6th Cir. 2011), as follows:

> "Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant. Absent diversity of citizenship, federal-question jurisdiction is required." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). . . . Our review of whether federal-question jurisdiction exists is governed by the well-pleaded complaint rule, which provides that jurisdiction exists only when a federal question is presented on the face of the plaintiff's complaint. *Caterpillar*, 482 U.S. at 392.
>
>         \* \* \* \*
>
> "[W]hen a federal statute wholly displaces the state-law cause of action through complete preemption," the preempted state-law claim arises under federal law. *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003). And while 28 U.S.C. § 1331 provides a district court general federal question jurisdiction, there are also more specific jurisdiction-conferring provisions, including § 301 of the LMRA, *see* 61 Stat. 156, § 301, *codified at* 29 U.S.C. § 185(a), which both preempts certain state-law contract claims and also confers federal jurisdiction over those claims, *see Textron Lycoming Reciprocating Engine Div., Avco Corp. v. UAW*, 523 U.S. 653, 657 (1998); *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985).
>
>         \* \* \* \*
>
> The Supreme Court has thus held that when "resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim, or dismissed as pre-empted by federal labor-contract law." *Allis-Chalmers*, 471 U.S. at 220 (internal citations omitted).
>
>         \* \* \* \*

Because "[§] 301 governs claims founded directly on rights created by [labor contracts], and also claims 'substantially dependent on analysis of a [labor contract],'" *Caterpillar*, 482 U.S. at 394, our Court has created a two-step test for determining whether a plaintiff's claims are preempted by § 301:

First, courts must determine whether resolving the state-law claim would require interpretation of the terms of the [labor contract]. If so, the claim is preempted. Second, courts must ascertain whether the rights claimed by the plaintiff were created by the [labor contract], or instead by state law. If the rights were created by the [labor contract], the claim is preempted. In short, if a state-law claim fails *either* of these two requirements, it is preempted by § 301.

*Mattis v. Massman*, 355 F.3d 902, 906 (6th Cir. 2004) (citing *DeCoe v. Gen. Motors Corp.*, 32 F.3d 212, 216 (6th Cir. 1994)).

*Kitzmann*, 415 F. App'x at 716–18.

Applying these standards, the district court held that plaintiff's claims that Kaiser denied her reasonable accommodation, despite asserting rights created by state law, implicated interpretation of the CBA. This was found to be so because Kaiser said it relied on CBA constraints in determining that it was unable to assign plaintiff to a shift that would ensure she would not find herself working as the only CT/Rad Technologist in diagnostic x-ray. Assessing the reasonableness of Kaiser's refusal to accommodate plaintiff's disability, the court concluded, would therefore require interpretation of the CBA terms.

Ordinarily, the district court's denial of plaintiff's motion to remand would be reviewed de novo. *Village of Oakwood v. State Bank & Trust Co.*, 539 F.3d 373, 377 (6th Cir. 2008). Indeed, evaluation of plaintiff's allegations under the well-pleaded complaint rule would appear to present a pure question of law. Plaintiff, as master of her claims, is entitled to assert her claims for relief exclusively under state law. However, if resolution of her claims is "substantially" dependent on analysis of terms of the CBA, *see Allis-Chalmers*, 471 U.S. at 220, then her claims are subject to complete preemption. The district court was thus required to look beyond the face of plaintiff's allegations and

the labels used to describe her claims and had to evaluate the *substance* of plaintiff's claims. Insofar as the district court went beyond the allegations of the complaint and inquired into the factual predicates for jurisdiction, any fact-findings integral to its ruling that complete preemption was triggered and federal jurisdiction established are reviewed for clear error. *See Lovely v. United States*, 570 F.3d 778, 781-82 (6th Cir. 2009). Such deference is accorded only to the extent the district court actually made factual findings. *Id.* Kaiser, the removing party, had the burden of establishing federal subject matter jurisdiction. *Village of Oakwood*, 539 F.3d at 377.

### 2. *Smolarek v. Chrysler Corp.*

Notwithstanding plaintiff's assertion of exclusively state-law claims, Kaiser contends the district court correctly recognized that disposition of plaintiff's claims will necessarily entail interpretation of CBA terms. This is so, Kaiser maintains, because both the disability-based discrimination and retaliation claims stem from Kaiser's refusal to grant plaintiff accommodating conditions of employment due to constraints imposed by the terms of the CBA. Plaintiff does not deny that she requested accommodation for her back-surgery-related impairment, but she (a) denies she requested the shift-change accommodations that Kaiser denied, and (b) denies that evaluation of the reasonableness of the accommodation she requested would require interpretation of CBA terms.

Review of governing Sixth Circuit precedents must begin with a ruling that is conspicuously omitted from the district court's opinion, *Smolarek v. Chrysler Corp.*, 879 F.2d 1326 (6th Cir. 1989) (en banc). The *Smolarek* court reversed the lower court's denial of a motion to remand and held that two employees' state-law claims for disability-based discrimination and retaliation were not subject to complete preemption under the LMRA.[1] The *Smolarek* majority focused on the allegations of the complaint

---

[1] Although the *Smolarek* court was divided regarding preemption of the plaintiffs' discrimination claims, all judges summarily agreed that plaintiffs' retaliation claims did not implicate interpretation of CBA terms. Here, too, Kaiser has clearly failed to show how plaintiff's retaliation claim (i.e., that Kaiser retaliated against her for complaining about disability-based discrimination), standing on its own, implicates interpretation of the CBA. Nor did the district court address the retaliation claim independently of the discrimination claim. It is apparent that plaintiff's retaliation claim rises and falls with her

and observed that the claim for violation of a state statute asserted a right not derived solely from the CBA. *Id*. at 1332-33. The fact that the CBA may have provided a remedy for the same misconduct was deemed insufficient to trigger preemption where the plaintiff had chosen not to seek relief under the CBA, but had proceeded exclusively under the state statute. *Id.* The fact that the employer might assert terms of the CBA as a defense to the claim was held not to overcome the paramount policies of the well-pleaded complaint rule and was held not to trigger preemption. *Id.* at 1333-34 (citing *Caterpillar Inc. v. Williams*, 482 U.S. 386, 398-99 (1987)).

All of these considerations apply with equal force in this case. Plaintiff's complaint explicitly asserts rights exclusively under Ohio's anti-discrimination civil rights law. The CBA is not mentioned in the complaint. Though the CBA includes assurance against handicap-based discrimination and provides that discrimination claims arising from application of CBA provisions shall be settled pursuant to the CBA grievance procedures, plaintiff's complaint does not invoke rights or procedures under the CBA. Plaintiff had pursued her grievance remedies under the CBA through step three, but chose not to pursue CBA remedies in her complaint, which alleges violations of state anti-discrimination law. Here, too, as in *Smolarek*, terms of the CBA are invoked only by Kaiser in defense of plaintiff's claims and as justification for its actions. Kaiser's reliance on the CBA as a defense is, in itself, insufficient to trigger preemption. *See Fox v. Parker Hannifin Corp.*, 914 F.2d 795, 800 (6th Cir. 1990) ("[A] defendant's reliance on a CBA term purely as a defense to a state law claim does not result in section 301 preemption.")

It is noteworthy that seven judges dissented from the *Smolarek* holding that the disability-based discrimination claim was not subject to complete preemption under the LMRA. Critical to the dissent, however, was the fact that Smolarek's complaint, on its face, sought relief under the CBA, i.e., "reinstatement to 'his former position or *another*

---

discrimination claim. Preemption of the retaliation claim is appropriate, if at all, only as a function of supplemental jurisdiction *if* plaintiff's discrimination claim is properly deemed preempted. *See Kitzmann*, 415 F. App'x at 720 (recognizing operation of supplemental jurisdiction to include state law claims joined to preempted claims). Accordingly, our analysis of the preemption issue focuses on the discrimination claim.

position consistent with his medical restrictions.'" *Smolarek*, 879 F.2d at 1336 (Kennedy, J., dissenting) (emphasis in original). Here, in contrast, plaintiff's complaint requests relief in the form of compensatory and punitive damages, attorney's fees and costs, and any equitable relief deemed appropriate. This distinction underscores the fact that plaintiff is not asking the court to manage her CBA-governed relationship with her employer, but is asking for enforcement of rights under state anti-discrimination law independent of the CBA.

Plaintiff thus correctly argues that *Smolarek* supports reversal of the district court's denial of her motion to remand. Kaiser's attempt to distinguish *Smolarek* is not persuasive. *Smolarek* is still authoritative. Its teaching may have been narrowed or clarified by subsequent rulings, but it is not easily distinguishable on the facts and circumstances of this case. *See*, *e.g.*, *Klepsky v. United Parcel Serv.*, 489 F.3d 264, 269-70 (6th Cir. 2007) (citing *Smolarek* with approval but finding preemption triggered because plaintiff's prayer for reinstatement required interpretation of CBA terms); *Mattis v. Massman*, 355 F.3d 902, 907 (6th Cir. 2004) (citing *Smolarek* with approval but distinguishing it and finding preemption triggered where rights asserted were established by CBA rather than by "external regime of state law" prohibiting handicap discrimination). Neither of the distinguishing circumstances noted in *Klepsky* and *Mattis* is presented in this case. Unlike *Klepsky*, plaintiff's complaint does not seek reinstatement. Unlike *Mattis*, plaintiff's complaint asserts rights established by an external regime of state law, not by the CBA. By negative implication, *Klepsky* and *Mattis* serve to buttress the conclusion that *Smolarek* governs and militates against preemption.

### 3. *"Inextricably Intertwined" vs. "Tangentially Related"*

Yet, Kaiser's position is not without support. Kaiser correctly argues that the relationship in which it is alleged to have unlawfully discriminated against plaintiff is undeniably created and governed by the CBA. After all, § 301 preemption is designed "to ensure uniform interpretation of collective-bargaining agreements, and thus to promote the peaceable, consistent resolution of labor-management disputes." *Lingle v.*

*Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 404 (1988). "[I]f the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement, the application of state law (which might lead to inconsistent results since there could be as many state-law principles as there are States) is pre-empted and federal labor-law principles—necessarily uniform throughout the Nation—must be employed to resolve the dispute." *Id.* at 405-06.

In *DeCoe v. Gen. Motors Corp.*, 32 F.3d 212 (6th Cir. 1994), the court recognized that preemption is required, even though resolution of a state law claim "will not involve the direct interpretation of a precise term of the CBA," if it will nonetheless require the court "to address relationships that have been created through the collective bargaining process and to mediate a dispute founded upon rights created by a CBA." *Id.* at 218 (quoting *Jones v. Gen. Motors Corp.*, 939 F.2d 380, 382-83 (6th Cir. 1991)). In determining whether the state law claim requires interpretation of CBA terms, *DeCoe* holds that the court is not strictly bound by the well-pleaded complaint rule, but "looks to the essence of the plaintiff's claim." *Id.* at 216. If the claim can be proven without the necessity of contract interpretation, it is independent of the CBA. *Id.* "Moreover, neither a tangential relationship to the CBA, nor the defendant's assertion of the contract as an affirmative defense will turn an otherwise independent claim into a claim dependent on the labor contract." *Id.* Preemption is triggered if resolution of the state law claim is "inextricably intertwined" with consideration of the terms of the CBA. *Smolarek*, 879 F.2d at 1330 (quoting *Allis-Chalmers*, 471 U.S. at 213).

The preemption question thus depends on whether the essence of plaintiff's claim implicates a dispute that is "inextricably intertwined" with interpretation of CBA terms or whether it is only "tangentially related" to the CBA. The answer to this question depends largely on how "the essence of plaintiff's claim" is characterized. In determining what is a fair and accurate characterization of the essence of plaintiff's claim, we bear in mind that plaintiff is master of her complaint. Yet, Kaiser has the burden of establishing preemption.

There can be no question but that plaintiff attempted to state a disability-based discrimination claim that is independent of the CBA, one that is only tangentially related to the terms of the CBA and is so related only because her relationship with Kaiser is governed by the CBA. Her complaint does not refer to any rights under the CBA and does not even hint at the need to resolve any dispute concerning interpretation of CBA terms. Plaintiff has steadfastly and consistently maintained that her request for accommodation was simply a request that she be assigned diagnostic x-ray duties only when she would have assistance, as needed, in positioning patients' bodies—for her welfare and that of the patients. She did not otherwise specify *how* her disability could be accommodated.

Plaintiff's request gave rise to an interactive discussion in which Kaiser viewed the request as necessarily implicating need for scheduling changes, changes that would implicate other employees' schedules and seniority rights under the CBA. Kaiser has consistently treated plaintiff's request for accommodation in this manner despite plaintiff's insistence that she had not requested a schedule change and had not, in her existing schedule, encountered a situation when needed help was not available. Further, in view of plaintiff's undisputed statement that the hospital "no lift" policy required all employees to obtain assistance before moving patients, it remains unclear why Kaiser treated plaintiff's request "not to work alone" as impliedly necessitating schedule changes. Yet, when Kaiser determined that the potentially accommodating schedule changes it suggested could not be granted without impinging on CBA rights of other employees, it appears not to have considered any other options for accommodating plaintiff in the CT/Rad Technologist position. Furthermore, although Kaiser has identified a handful of CBA provisions that pertain to employee scheduling and seniority rights, there is no showing that plaintiff ever contested Kaiser's interpretation of those terms or asserted other CBA terms bearing on her request.

Plaintiff's dispute with Kaiser does not stem from any difference about what the CBA provisions say or how they operate. Rather, she contends the cited CBA provisions are relevant only to a request for accommodation that she never made. Her

discrimination claim is premised not on Kaiser's interpretation and application of those CBA terms, but on Kaiser's failure to show that the accommodation she requested was unduly burdensome.

Accordingly, we conclude that  Kaiser has not carried its burden of demonstrating grounds for complete preemption of plaintiff's claim.  Although it cannot be denied that plaintiff's claim—that Kaiser unlawfully discriminated against her in the terms and conditions of employment by refusing to reasonably accommodate her disability—implicates an employment relationship created and defined by the CBA, Kaiser has not demonstrated that resolution of the claim is so "inextricably intertwined" with interpretation of CBA terms as to trigger complete preemption.  Rather, Kaiser has shown only that provisions of the CBA are tangentially related to plaintiff's claim.   It follows that the district court's denial of plaintiff's motion to remand was in error and must be reversed.

### 4. *Attorney's Fees*

Plaintiff has asked for award of fees and costs incurred in responding to Kaiser's improper removal of the case.  It is within our discretion to award fees and costs under 28 U.S.C. § 1447(c).  "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). "Conversely, when an objectively reasonable basis exists, fees should be denied." *Id.* The question of complete preemption under the circumstances of this case is a close one. It cannot be said that Kaiser lacked an objectively reasonable basis for removal. Plaintiff's request for award of fees and costs is therefore denied.

### III. CONCLUSION

In sum, the district court's denial of plaintiff's motion to remand to state court is **REVERSED** and the case is **REMANDED** to the district court with instructions to remand the case to the state court.  The district court's award of judgment on the pleadings is **VACATED** for lack of jurisdiction.