RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 13a0237p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

JAMES POWERS, LINDA POWERS,
          *Plaintiffs-Appellees*,

    *v.*

COTTRELL, INC,

          *Defendant-Appellant.*

No. 12-5923

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 3:11-cv-01209—Todd J. Campbell, Chief District Judge.

Decided and Filed: May 6, 2013[*]

Before: MERRITT, SUHRHEINRICH, and DONALD, Circuit Judges.
_____

## COUNSEL
_____

**ON BRIEF:** Daniel J. Carpenter, St. Louis, Missouri, Paul M. Buchanan, ORTALE, KELLEY, HERBERT & CRAWFORD, Nashville, Tennessee, for Appellant. Robert P. Gritton, Murfreesboro, Tennessee, for Appellees.
_____

## OPINION
_____

SUHRHEINRICH, Circuit Judge.

## BACKGROUND

On September 18, 2006, Plaintiffs James and Linda Powers (collectively, "Plaintiffs") filed this product-liability case in the Circuit Court for Rutherford County, Tennessee (the "state court") against Cottrell, arising from a shoulder injury sustained

_____
[*] This decision was originally issued as an "unpublished decision" filed on May 6, 2013. The court has designated the opinion as one recommended for full-text publication.

1

by James Powers ("Powers").  The injury occurred in the course and scope of Powers'

employment by Jack Cooper Transport Company, Inc. ("JCTC"),[1] while he was tying

down a Nissan vehicle to an auto transport rig manufactured by Defendant Cottrell, Inc.

("Cottrell").  Plaintiffs, citizens of Tennessee, sued (1) Cottrell, a citizen of Georgia,

(2) Nissan, a citizen of Tennessee, and (3) WWL Vehicle Services America, Inc. f/k/a

Distribution and Auto Service, Inc., a citizen of California and New Jersey.  Powers

alleged state law claims for product-liability, negligence, and breach of warranty, and

Linda Powers alleged a claim for loss of consortium.   The complaint asserted that the

chain and ratchet system[2] of the auto transport rig was defectively designed and

manufactured, and that Cottrell was negligent in its failure to analyze injury data or warn

users.  As part of their argument, Plaintiffs assert that Cottrell had a multitude of

different options besides the chain and ratchet system, including but not limited to straps

and non-manual securement systems.

On November 8, 2006, Cottrell removed the case to the United States District

Court for the Middle District of Tennessee (the "district court") on the grounds that

Plaintiffs fraudulently joined non-diverse defendant Nissan.   The district court

determined that Nissan was not fraudulently joined, and remanded the case back to the

state court on January 17, 2007.  *Powers v. Cottrell*, No. 3:06-cv-01094 (M.D. Tenn.

2007).  The state court later granted summary judgment in favor of the only non-diverse

defendant, Nissan.

On November 21, 2011, Cottrell apparently became aware of the argument[3] that

removal was appropriate because resolution of Plaintiffs' claims would require

---

[1] Powers is the driver of a car-hauling truck.  JCTC, Powers' employer, is not a party in the case.

[2] The auto transport rig was equipped with a mechanical system used to tie down vehicles during the loading process by utilizing a ratchet and chain design.  According to the complaint, Powers was using the mechanical system by pulling a tie-down bar when the chain went slack and the ratchet reversed, causing Powers to fall backwards.  The ratchet then caught and violently jerked both of Powers' arms and shoulders.

[3] Cottrell explains in its appellate brief that "on November 21, 2011, the plaintiffs' counsel in *McNary v. Cottrell*, [No. 3:11-cv-01106-JPG-PMF (S.D. Ill.), another case pending against Cottrell] responded to Cottrell's LMRA preemption argument . . . set[ting] forth certain admissions, which confirmed the validity of Cottrell's argument and showed the LMRA nature of their claims."

interpretation of a collective bargaining agreement ("CBA") made between Powers, JCTC, and Powers' union. This meant that the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 141, *et seq.* could potentially completely preempt Plaintiffs' state law claims. Cottrell explained in its appellate brief that it did not raise the LMRA argument sooner because "[a]s a non-union employer and non-party to the CBA at issue here, Cottrell was unaware of the LMRA complete preemption grounds, the prior grievance decisions on the issues in the lawsuits, or even that there was such a doctrine as LMRA complete preemption." As a response to this realization, Cottrell removed the case to the district court again on December 20, 2011, after it had been in the state court for more than four years.[4] Cottrell's specific argument was that although it was not party to the collective bargaining agreement, resolution of Powers' product-liability claims would nonetheless require interpretation of the CBA, and any state law claim "substantially dependent upon analysis of a [CBA]" is preempted by § 301 of the LMRA. *Alongi v. Ford Motor Co.*, 386 F.3d 716, 724 (6th Cir. 2004).

On April 23, 2012, the district court remanded the case for the second time. *Powers v. Cottrell*, No. 3:11-cv-01209 (M.D. Tenn. 2012). The district court held that

> Section 301 preempts state law claims that are substantially dependent upon analysis of a CBA, but it does not reach claims that only tangentially involve CBA provisions. By its very terms, this provision confers federal subject-matter jurisdiction only over suits for violations of contracts. Here, Plaintiffs' claims are not dependent upon analysis of a CBA. Defendant's duties to Plaintiffs arise under state law (products liability, negligence and breach of warranty), not under a CBA. Plaintiffs' rights are created by state law, not by a CBA. The proof required to establish Plaintiffs' state law claims does not involve a CBA, and this is not an action for violation of a contract. Moreover, Defendant Cottrell is not a party to the CBA at issue and, thus, is not bound or restricted by it and has no rights or obligations thereunder. Its duties exist independent of the CBA and are duties owed to members of the public as a matter of state law.

---

[4]On page 15 of its appellate brief, Cottrell explains that, around the same date, it also removed 18 other cases that were pending against it from different plaintiffs.

*Id.* (citations omitted). The district court did not rely on the timeliness of the removal as a basis for remanding, but did note that the case "had been proceeding more than four years in the state court" and also that this was Cottrell's second attempt at removal.

On July 6, 2012, the district court awarded to Plaintiffs attorney fees incurred as a result of the removal. 28 U.S.C. § 1447(c). In its order awarding attorney fees, the district court explained that "the [district court], in its discretion, finds that Defendant's attempted removal was not objectively reasonable under the facts and circumstances."

Defendants now appeal, alleging that the district court abused its discretion in awarding attorney fees. Defendants do not appeal the order to remand.

## STATEMENT OF FACTS

Powers was employed as an over-the-road truck driver with JCTC. As part of his job requirements in the course of his employment, Plaintiff routinely loaded automobiles, trucks, and sport utility vehicles onto his trailer for the purposes of transporting them to destinations throughout the United States. JCTC did not manufacture its own auto transport rigs, but ordered them from Cottrell. The head of purchasing at JCTC, Gary Page, would provide the specifications for the rig to Cottrell. Page's purchasing decisions are governed by the CBA. Cottrell is not an union employer, nor is it party to the CBA. It is undisputed that the specifications Page provided to Cottrell did not reference the CBA, and also that Cottrell never consulted the CBA when it designed the rigs for JCTC.

Cottrell now alleges that several provisions from the CBA are implicated by Plaintiffs' product liability claims. Specifically, Cottrell contends that the following provisions are relevant.

## A.     Equipment Safety

With regard to highway equipment safety, a Joint Health and Safety Committee (the "Committee") is formed in Article 30 of the CBA. Article 30, Section 8 charges the

Committee with the task of ensuring that equipment safety is in compliance with SAE[5] recommended practices for commercial vehicle equipment. Article 30, Section 8 also assigns the Committee the task of reviewing tie-down mechanical devices, chain safety, and other equipment issues.

**B.     Quick Release Ratchets**

Article 30, Section 15 states that "[A]ll new equipment ordered on or after the date of ratification will be provided with quick release ratchets." A quick release ratchet allows a driver to untie the rig with one move of the tie-down bar, as opposed to an old style ratchet, which does not have this quick release mechanism.

**C.     Minimum Standards**

The CBA also contains Article 6, titled "Maintenance and Standards." It requires all working conditions (including rigs) to be "not less than the minimum standards" in effect at the time of the CBA's ratification.

**D.     Grievance Procedure**

Article 6 of the CBA states that "parties agree that the Local Unions, the employees and the Employers signatory to this Agreement are obligated to file and process all grievances or complaints involving alleged unsafe or unhealthful workplace conditions pursuant to the grievance procedures of the Agreement."

**ANALYSIS**

**A.     Standard of Review**

The award of fees is reviewed under an abuse of discretion standard. "District courts have considerable discretion to award or deny costs and attorney fees under 28 U.S.C. § 1447(c), and we will overrule whatever decision is reached only where such discretion has been abused." *Warthman v. Genoa Twp Bd. of Tr.*, 549 F.3d 1055, 1059

---

[5] SAE Recommended Practices are manuals published by SAE International, a global association of engineers and related technical experts in the aerospace, automotive, and commercial-vehicle industries.

(6th Cir. 2008).  An abuse of discretion occurs where "[a] district court . . . relies on clearly erroneous findings of fact, or when it improperly applies the law or uses an erroneous legal standard." *Christian Schmidt Brewing Co. v. G. Heileman Brewing Co.*, 753 F.2d 1354, 1356 (6th Cir. 1985) (internal quotation omitted).  However, the Supreme Court has held that:

> The fact that an award of fees under § 1447(c) is left to the district court's discretion, with no heavy congressional thumb on either side of the scales, does not mean that no legal standard governs that discretion. We have it on good authority that "a motion to [a court's] discretion is a motion, not to its inclination, but to its judgment; and its judgment is to be guided by sound legal principles."

*Martin v. Franklin Capital Corp.*, 546 U.S. 132, 139 (2005) (citations omitted).

## B.        28 U.S.C. § 1447 Award of Fees

The removal statute provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."  28 U.S.C. § 1447(c).  The Supreme Court has instructed that fee awards are inappropriate unless "the removing party lacked an objectively reasonable basis for seeking removal."  *Martin*, 546 U.S. at 141, *see also Paul v. Kaiser Found. Health Plan*, 701 F.3d 514, 523 (6th Cir. 2012) ("Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal.  Conversely, when an objectively reasonable basis exists, fees should be denied.") (citations and internal quotations omitted).  The Supreme Court has held that the "appropriate test for awarding fees under § 1447(c) should recognize the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party, while not undermining Congress' basic decision to afford defendants a right to remove as a general matter, when the statutory criteria are satisfied."  *Martin*, 546 U.S. at 140.

District courts retain considerable discretion in awarding attorney fees.  *Id.* at 141.  And although the general rule is that courts may award attorney's fees only where the removing party lacked an objectively reasonable basis for seeking removal, "[i]n

applying this rule, district courts retain discretion to consider whether unusual circumstances warrant a departure from the rule in a given case." *Martin*, 546 U.S. at 141.

In order to prevail on this appeal, Cottrell has to show that the district court abused its discretion by finding that Cottrell did not have an objectively reasonable basis for believing that Plaintiffs' state law claims were completely preempted by the LMRA.

## C.        Objectively Reasonable Basis for Complete Preemption

Ordinarily, under the well-pleaded complaint rule, if the plaintiff's complaint relies only on state law claims, the case may not be removed. *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 325 (6th Cir. 2007). This is true even if "[f]ederal preemption is raised as a defense" to the allegations in a plaintiff's complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) (emphasis in original).

However, the "Supreme Court has developed a limited exception to the well-pleaded complaint rule: the complete-preemption doctrine." *Gentek Bldg. Prods.*, 491 F.3d at 325. "If Congress intends that a federal statute should completely preempt an area of state law, any complaint alleging claims under that area of state law is presumed to allege a claim arising under federal law." *Id.* (citing *Palkow v. CSX Transp., Inc.*, 431 F.3d 543, 552 (6th Cir. 2005) (citing *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63-64 (1987))). Under the "complete preemption" doctrine, if a state law has been completely preempted, any claim purportedly based on the preempted state law is considered a federal claim, and therefore removable. *Id; see also* 28 U.S.C. § 1441(a). A state law is completely preempted if the force of the federal statute is so "extraordinary" that it "converts an ordinary state common-law complaint into one stating a federal claim." *Caterpillar,* 482 U.S. at 393. Cottrell's removal could only have been proper if the LMRA completely preempted Plaintiffs' claims.

Section 301 of the LMRA states: "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having

jurisdiction of the parties." 29 U.S.C. § 185. The Supreme Court has ruled that "the pre-emptive force of § 301 is so powerful as to displace entirely any state cause of action for violation of contracts between an employer and a labor organization." *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 7 (2003) (internal quotation omitted). However, § 301 reaches beyond the violation of contracts. "Since 1962, the Supreme Court has held that section 301 preempts state law rules that substantially implicate the meaning of collective bargaining agreement terms." *DeCoe v. Gen. Motors Corp.,* 32 F.3d 212, 216 (6th Cir. 1994) (citing *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 210 (1985) (citing *Teamsters Local 174 v. Lucas Flour Co.*, 369 U.S. 95 (1962))). On the other hand, "when the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." *Livadas v. Bradshaw*, 512 U.S. 107, 124 (1994). Accordingly, the Sixth Circuit has created a two-step test for determining whether a plaintiff's state law claims are preempted by the LMRA:

> First, courts must determine whether resolving the state-law claim would require interpretation of the terms of the [labor contract]. If so, the claim is preempted. Second, courts must ascertain whether the rights claimed by the plaintiff were created by the [labor contract], or instead by state law. If the rights were created by [the labor contract], the claim is preempted. In short, if a state-law claim fails *either* of these two requirements, it is preempted by § 301.

*Paul*, 701 F.3d at 519 (quoting *Mattis v. Massman*, 355 F.3d 902, 906 (6th Cir. 2004)) (emphasis and modification in original). Cottrell argues that it had an objectively reasonable basis to believe in the existence of the first prong of the test.

In evaluating the first prong of the test, the preemption question "depends on whether the essence of plaintiff's claim implicates a dispute that is 'inextricably intertwined' with interpretation of CBA terms or whether it is only 'tangentially related' to the CBA." *Paul*, 701 F.3d at 522. Cottrell alleges that it did not lack an objectively reasonable basis for believing that the dispute was "inextricably intertwined" with the CBA.

Cottrell argues that four provisions from the CBA discussed in the Statement of Facts are implicated by Plaintiffs' claims: the provisions on equipment safety, quick release ratchets, minimum standards, and the grievance procedure. We can immediately dispose of the grievance procedure argument because the grievance procedure described in the CBA specifically binds unions, employees, and employers, none of which describes Cottrell. Section 6 of the CBA states that "parties agree that the Local Unions, the employees and the Employers signatory to this Agreement are obligated to file and process all grievances or complaints involving alleged unsafe or unhealthful workplace conditions pursuant to the grievance procedures of the Agreement." Furthermore, Plaintiffs are not alleging a claim for unsafe workplace conditions. Furthermore, the text of the CBA does not bar Plaintiffs from making other claims, because it contemplates concurrent judicial proceedings: "the Local Union and Employer shall jointly prepare a form which shall contain the following information. . . . Pending governmental agency or judicial proceedings, if any, involving the same subject matter." Therefore, Plaintiffs were clearly not obligated to use the grievance procedure in lieu of a products liability claim.

Next, we turn to the portions of the CBA that involve equipment safety, quick release ratchets, and minimum standards. Cottrell claims that its removal could not possibly have been objectively unreasonable, because LMRA preemption doctrine is a "bewildering," and "confusing" area of law.[6] However, we hold that the Sixth Circuit precedent available to Cottrell at the time of removal made it clear that Cottrell had no reason to believe that removal would be proper.

In *Paul v. Kaiser Foundation Health Plan*, the plaintiff Dana Paul was hired by Kaiser Foundation Health Plan of Ohio ("Kaiser") as a CT/Radiology Technologist. 701 F.3d at 517. She underwent back surgeries and, believing that she could no longer safely perform physically demanding duties, filed a "Request for Accommodation,"

---

[6]As the only case law explanation for its confusion, Cottrell cites a Seventh Circuit case from 2001 that interpreted a 1985 Supreme Court case as declining to resolve a "circuit split" about LMRA preemption. *In re Benz Metal Prods. Co.*, 253 F.3d 283, 289 (7th Cir. 2001) (interpreting *Livadas v. Bradshaw*, 512 U.S. 107, 124 n.18 (1994)). However, even if there is a circuit split, Sixth Circuit doctrine is clear.

explaining that she could not work without assistance.  She asked to be exempted from assignments and shifts where she would be the only CT/Radiology Technologist on duty. *Id.*  Kaiser attempted to work with the employees' union to temporarily change Paul's shifts and responsibilities, but could not attain approval from the union because reportedly "the union was unwilling to infringe other employees' seniority rights under the collective bargaining agreement." *Id.*  After Paul brought state law claims for disability discrimination and retaliation in state court, Kaiser removed the case, arguing that the case would require interpretation of the CBA.  *Id.* at 518.  The Sixth Circuit remanded, holding that LMRA preemption had not been triggered:

> The CBA is not mentioned in the complaint.  Though the CBA includes assurance against handicap-based discrimination and provides that discrimination claims arising from application of CBA provisions shall be settled pursuant to the CBA grievance procedures, plaintiff's complaint does not invoke rights or procedures under the CBA.  Plaintiff . . . chose not to pursue CBA remedies in her complaint, which alleges violations of state anti-discrimination law.  Here, too, as in *Smolarek*, terms of the CBA are invoked only by Kaiser as a defense of plaintiff's claims and as justification for its actions.  Kaiser's reliance on the CBA as a defense is, in itself, insufficient to trigger preemption.

*Id.* at 521.

In the instant case, Cottrell's claims of LMRA preemption are clearly at odds with the holding in *Paul* because: (1) Cottrell is not even party to the CBA, whereas Kaiser was an employer party, and the Sixth Circuit nonetheless found no preemption; (2) there is no evidence that Cottrell consulted the CBA in manufacturing the device at issue, whereas Kaiser made communications clearly pertaining to the CBA; and (3) similar to the plaintiff's complaint in *Paul,* Plaintiffs' complaint does not invoke rights or procedures under the CBA.  *See also Smolarek v. Chrysler Corp.*, 879 F.2d 1326, 1332 (6th Cir. 1989) ("That [the defendant] may defend . . . by reference to its responsibilities under the collective bargaining agreement . . . is, in our view, no basis to hold that § 301 preemption is mandated under these circumstances.").  *Paul* is not the only case to reject the complete preemption argument on this basis.  In *Alongi v. Ford Motor Co.*, the plaintiffs were former employees who brought a suit in state court against

their former employer, alleging, among other things, common law fraud during the negotiation of the CBA.[7] *Alongi,* 386 F.3d at 719. The Sixth Circuit noted that because "plaintiffs did not allege that either party had violated the terms of the CBA," § 301 did not preempt the plaintiffs' claim. *Id.* at 725.

### 1.          Industry Standards

Defendants argue that evaluating Plaintiffs' product liability claims requires interpretation of the CBA. Under Tennessee law, when assessing whether a product is defective, courts must consider "the customary designs, methods, standards and techniques of manufacturing, inspecting and testing by other manufacturers or sellers of similar products." TENN. CODE ANN. § 29-28-105(b). Plaintiffs argue that the CBA "sets forth 'customary designs' and 'standards' for rigs," because Article 6 of the CBA requires that the employer provide rigs "not less than the minimum standards." However, this claim is untenable. The case law clearly states that state law claims are preempted only if "resolving the state-law claim would *require* interpretation of the terms of the [labor contract]." *Paul*, 701 F.3d at 519 (citation omitted) (emphasis added). In determining whether a product is unreasonably dangerous, the court considers "the state of scientific and technological knowledge available to the manufacturer or seller at the time the product was placed on the market." TENN. CODE ANN. § 29-28-102(8). However, an inquiry into the "state of scientific and technological knowledge available" to Cottrell does not require interpretation of the CBA, especially because Cottrell does not even claim that it referenced the CBA at the time it manufactured the rig. Furthermore, the general evaluation of industry standards does not require reference to the CBA; it can be provided by expert testimony, documents, manuals, or other sources. A dispute is completely preempted only if resolution *requires* interpretation of a CBA. *Paul*, 701 F.3d at 519.

---

[7]This allegation was in the plaintiff's original complaint, which was later amended. However, the Sixth Circuit stated: "Mindful of our independent obligation to ensure our subject matter jurisdiction, we conclude that none of the claims in the plaintiffs' *original* complaint were completely preempted by the Labor-Management Relations Act, either." *Alongi*, 386 F.3d at 719 (emphasis in original).

**2.    Quick Release**

Cottrell contends that the CBA must be interpreted because it requires quick-release ratchets, and the court would need to consider whether this requirement would be inconsistent with the devices that Plaintiffs set forth as reasonable alternatives to the ratchet and chain device. However, the only portion of the CBA regarding quick-release ratchets on record is the statement in Article 30 Section 15: "All new equipment ordered on or after the date of ratification will be provided with quick release ratchets." The CBA does not define "quick release ratchets" or explain their usage in the industry. Therefore, resolution of the product-liability claim will not involve interpretation of the CBA beyond a mere reference. Indeed, although Cottrell cites the CBA for the requirement of quick release ratchets, it turns to direct evidence (for example, the testimony of Gary Page) in order to actually explain the nature of the device, and whether they are standard in the industry.

**3.    Safety Guidelines**

Cottrell also argues that the district court erred by confusing the standard of care and duty. Cottrell argues that an analysis of the CBA is necessary to determine whether duty was breached. But Cottrell's argument is undermined by *Stringer v. Nat'l Football League*, 474 F. Supp. 2d 894, 913 (S.D. Ohio 2007). In *Stringer,* the district court considered the duty owed by the National Football League ("NFL") and Riddell Sports Group, Inc. ("Riddell") to a football player in a wrongful death action. *Id.* at 898. The NFL had published safety guidelines as part of its 2001 Game Operations Manual, and the plaintiff argued that it owed a duty to exercise reasonable care in making sure the guidelines were complete. *Id.* at 909. A collective bargaining agreement also imposed safety guidelines on individual NFL clubs. *Id.* at 910. Because the completeness of the NFL's safety guidelines depended on existing guidelines established by the CBA, the district court ruled that the wrongful death claim against NFL was preempted. *Id.* However, the court ruled that while the CBA established a committee to address the safety of equipment, Plaintiff's "product liability and negligence claims against the Riddell Defendants is not in any way dependent on an interpretation of the meaning of

this CBA provision." *Id.* at 913. Furthermore, the fact that the football player "may have been required, as a condition of his employment, to wear Riddell equipment is *simply irrelevant* to the question of whether that equipment was negligently designed or manufactured or unreasonably dangerous for its intended use." *Id.* (emphasis added). In the face of this text, from a case that Cottrell itself cited, Cottrell should have known that its removal was unreasonable.[8]

### 4.        Non-Signatories to the CBA

Lastly, Cottrell contends that the district court misstated the law in its opinion. The district court held that: "Moreover, Defendant Cottrell is not a party to the CBA at issue, and thus, is not bound or restricted by it and has no rights or obligations thereunder. Its duties exist independent of the CBA and are duties owed to members of the public as a matter of state law." *Powers v. Cottrell, Inc.*, No. 3-11-1209 (M.D. Tenn. April 23, 2012). Cottrell argues that Cottrell's nonparty status is not dispositive of the issue. "Defendants' status as non-signatories to the CBA does not prevent them from raising the preemption defense." *Stringer*, 474 F. Supp. 2d at 902. However, the *Stringer* court was addressing whether defendant could raise the preemption defense at all. After determining that defendant could raise the defense, the court proceeded to analyze whether "(1) [the case] arose from the CBA or (2) resolution of the claim is substantially dependent on an analysis of the terms of the CBA, or is inextricably intertwined with it." *Id.* at 903. Similarly, here the district court did not treat Cottrell's non-signatory status as dispositive; it properly considered it alongside other factors, including the fact that "proof required to establish Plaintiffs' state law claims does not involve a CBA" and that Cottrell's "duties exist independent of the CBA and are duties owed to members of the public as a matter of state law."

---

[8]Cottrell also cites *Duerson v. NFL, Inc.*, 2012 WL 1658353 (N.D. Ill.), which, like *Stringer,* involved a wrongful death action against the NFL and Riddell. Cottrell could not possibly have relied on this case as an objectively reasonable basis for removal at the time they removed, because the case had not yet been published on Cottrell's date of removal. But even taking *Duerson* into consideration, the court focused its preemption analysis on using the CBA to assess only the NFL's duties, not Riddell's. *Id.* at *1-6. Furthermore, the *Duerson* court emphasized that preemption requires "case-by-case analysis, in some situations preemption is found and in others it is not." *Duerson*, 2012 WL 1658353 at *5 (citing *Benz Metal Prods.*, 253 F.3d at 286)).

It is noteworthy that in addition to the district court's decision in this case, Cottrell's removals have been now rejected in 17 other federal cases.**9** These decisions were issued after Cottrell's attempted removal in this case, so Cottrell could not have taken them into account in its basis for removal. However, the fact that Cottrell's removals have been remanded in so many instances offers some insight into the reasonableness of the removals.

In sum, there is an abundance of case law holding that § 301 does not preempt state tort law claims. In light of clear case law, Cottrell had no objectively reasonable basis for removal.

**D.      Timeliness**

Plaintiffs also argue that Cottrell's removal was untimely under 28 U.S.C. § 1446(b). However, because we affirm the district court's order remanding the case, the timeliness issue is moot.

**CONCLUSION**

For the foregoing reasons, we AFFIRM the district court's opinion.

---

[9]*McNary v. Cottrell*, No. 3:11-cv-01106-JPG-PMF (S.D. Ill.); *Belleville v. Cottrell*, No. 11-cv-1114-JPG-PMF (S.D. Ill.); *Davenport v. Toyota Motor Sales, USA, Inc.*, No. 11-cv-1108-JPG-DGW (S.D. Ill.); *Henderson v. Auto Handling Corp.*, No. 11-1118-GPM (S.D. Ill.); *Smith v. Cottrell*, No. 11-cv-1112-JPG-SCW (S.D. Ill.); *Street v. Cottrell*, Case No. 3:11-cv-1119-JPG-DGW (S.D. Ill.); *Thompson v. Cottrell*, No. 11-1113-GPM (S.D. Ill.); *Mandeville v. Cottrell*, No. 11-1107-GPM (S.D. Ill.); *Johnson v. Auto Handling Corp., et al.*, 4:11-cv-02219-CDP (E.D. Mo.); *Sullivan v. Cottrell, Inc. et al.*, No. 11CV1076S (W.D.N.Y.); *Huff v. Cottrell, et al.*, No. l-01270-CV-WGAF (W.D. Mo.); *Hale v. Cottrell, Inc., et al.*, No.: 11-1273-CV-WSOW (W.D. Mo.); *Longstreet v. Cottrell, Inc.*, 11-CV-1125 (S.D. Ill. Apr. 23, 2012); *Hernandez v. Cottrell, Inc.*, 2012 WL 4009696 (N.D. Ill.); *Lewis v. Cottrell, Inc.*, 2012 WL 3144625 (D. Md.); *Bailey v. Cottrell, Inc.*, No. 2:11-cv-00330-WCO, doc. 34 (N.D. Ga., Oct. 31, 2012); *Spencer v. Cottrell, Inc.*, No. 2:11-cv-00331-WCO, doc. 33 (N.D. Ga., Oct. 31, 2012).