RILEY, Chief Judge.
Nikko Jenkins was released from prison in July 2013 after serving ten and one-half years of a twenty-one-year sentence. About three weeks after his release, he killed four people in Omaha, Nebraska, including Andrea Kruger. After Andrea’s death, her husband, Michael-Ryan Kruger, as special administrator for Andrea’s *299 estate, sued in the District , Court of Douglas County, Nebraska, the State of Nebraska; the Department of Corrections (department); three department officials; Correct Care Solutions (CCS), a private contractor the department retained to provide prison psychiatric services to inmates including Jenkins; and CCS employee Dr. Natalie Baker. The department officials named were Robert Houston, the former department director; Cameron White, Ph. D., the department’s Behavioral Health Administrator; and Dr.. Randy Kohl, the department’s Deputy Director of Health Services (collectively, department officials). In his second amended complaint, Kruger named only the State of Nebraska and the department officials.
Kruger alleged deliberate indifference, violation of Andrea’s substantive due process rights under the Fourteenth Amendment to the United States Constitution, see 42 U.S.C. §§ 1983, 1988(a), and state law negligence claims under the Nebraska State Tort Claims Act (STCA), Neb.Rev. Stat § 81-8,209 ei seq. After the case was removed to federal court, see 28 U.S.C. §§ 1441, 1446, the district court[1] granted the state and department officials’ motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(3), (6).[2] Kruger appeals. We affirm,[3]
I. BACKGROUND[4]
Kruger’s complaint alleged “the State of Nebraska released Jenkins, a violent and dangerous criminal, from incarceration” before he had served his full term even though “Jenkins repeatedly exhibited signs of serious mental health issues.” According to Kruger, Dr. Baker evaluated Jenkins numerous times between 2009 and 2013, and Jenkins repeatedly told Dr. Baker about his delusional and violent thoughts. Jenkins informed Dr. Baker “he had been hearing the voice of an Egyptian god who' told him to harm others” and “he often had violent thoughts, and fe[lt] he w[ould] hurt ■ others when released.” Kruger also pled “Jenkins re-peatódly told staff evaluators he did not want to be released into the community because he will kill people.” Less than six months before Jenkins’s release, Dr. Baker reported Jenkins “had a mental illness” and he “was an imminent danger to hurt somebody.” She recommended a civil commitment. Jenkins’s family, friends, and Jenkins himself made repeated requests for civiP commitment to the Johnson County (Nebraska) Attorney. Jenkins stated to department employees “he wanted to be committed someplace to get mental help because he would kill people if he did not receive the mental help and was released.”
Kruger alleged “[s]ometime in spring of 2013, .. ■. Houston gave White a list of inmates ... and told him to change all clinical recommendations from inpatient to outpatient treatment so that [the inmates] would be eligible for release from the Department.” According to Kruger, Jenkins was on this list of inmates, ,so “White *300 changed the recommendation :on Jenkins from inpatient to outpatient treatment, which accelerated his release from the 'Department.”
Kruger also alleged that in the months before Jenkins’s release, the Johnson County Attorney and the State’s Public Counsel were investigating whether to pursue having Jenkins civilly committed upon his release. During this time, department employees met with’ the Public Counsel to discuss Jenkins. Dr. Mark Weilage, the. department’s Assistant Behavioral Health Administrator, spoke by phone with the Deputy Johnson County Attorney about Jenkins. No defendants ever disclosed Dr. Baker’s evaluation— which, according to Kruger, could have provided , a medical basis for civil commitment — during the meeting with the Public Counsel, the phone call with the Deputy County Attorney, or at any other time.
Kruger charged the defendants with “acting with deliberate indifference to Andrea Kruger’s constitutional rights” by ■
a. Failing to properly enforce, apply, . interpret, calculate, implement and comply with the rules, regulations, policies, procedures and laws regarding the detainment, sentencing, detention, incarceration, commitment and release of inmates. ■ •
b. Failing to properly comply with rules, regulations, policies, proce- ' dures and/or laws with respect to “good time” credited to inmates for good behavior while incarcerated.
c. Failing to deduct and/or alter “good time” credit from an inmate’s sentence after the inmate had exhibited violent and/or insubordinate conduct during the inmate’s term of incarceration and/or engaged in other conduct, which violates established policies, procedures, and/or rules.
In support of his state ‘ law negligence claim against? the state, Kruger alleged the defendants “had a duty to Andrea Kruger in that ... [t]he magnitude of the risk of harm to Andrea Kruger was great as Nik-ko Jenkins had informed employees, contractors, officers and/or agents of the ... State of Nebraska that he- intended to commit murders.” ' Further, “[t]he 'State was the only entity that had the- opportunity. and ability t’o exercise care to protect Andrea Kruger by not releasing ■ Nikko Jenkins,” and- it was foreseeable Jenkins would harm Kruger if he were released.
The original defendants removed the case to federal court. After Kruger amended his complaint, ‘the state and the department officials moved to dismiss, pursuant to Féderal Rule of Civil Procedure 12(b)(1), (6). The district court granted the motion, deciding the state and the department officials in their official capacities were immune- from suit and Kruger failed to state a claim. First, the district court rejected Kruger’s assertion that the defendants waived their immunity defenses by removing the case to federal court. The district court[1] then dismissed Kruger’s § 1983 claims against the state and the department officials in their official capacities because suits against state officials in their official capacity are actually suits against the state and states are not “persons” who may be sued for money damages under § 1983. ■ The district court dismissed Kruger’s § 1983 claims agáinst the department officials in their individual capacities because “Kruger failed to plead that Andrea [Kruger]' was deprived of a right secured by the Constitution and laws of the United States,” as required to state a claim under § 1983. ■ <•
The district court dismissed Kruger’s state law claims against the department officials in their individual capacities because the challenged actions undisputedly *301 were taken “solely within the scope of their employment,” which meant Kruger would have to comply with the STCA. See Bohl v. Buffalo County, 251 Neb. 492, 557 N.W.2d 668, 673 (1997)." Finally, the district court dismissed' Kruger’s state law claims against the department officials in their official capacities because their actions fell within the discretionary function exception to the STCA’s immunity waiver. See Neb.Rev.Stat. § 81-8,219(1). Kruger appeals.
II. DISCUSSION
We review de novo the district court’s ruling on a motion to dismiss; See Christiansen v. W. Branch Cmty. Sch. Dist., 674 F.3d 927, 933-34 (8th Cir.2012).
A. Section 1983 Claims
1. Waiver
First, we address Kruger’s assertion “the defendants have waived the sovereign immunity defense by removing this case from state court.” Kruger asserts more generally that the defendants “waived any immunity defenses:” Kruger relies on Lapides v. Board of Regents of University System of Georgia, 535 U.S. 613, 616, 122 S.Ct. 1640, 152 L.Ed.2d 806 (2002), a case in which state officials removed the plaintiffs state and federal' claims hgainst them in their personal and official capacities to federal court.-' The state- then argued it was immune ■ from suit in federal court under the Eleventh Amendment, even though “a state statute had waived sovereign immunity from state-law suits in state court.” Id. The Supreme Court rejected this argument, concluding a state may not remove a case to federal court and then attempt to assert immunity that would- not have been available in state court. Id. at 619-20, 122 S.Ct. 1640. The Lapides court explained its holding was limited “to the context of state-law claims, in respect to which the State has explicitly waived immunity from state-court proceedings.” Id. at 617-18, 122 S.Ct. 1640. The Lapides court’s decision itself does not necessarily apply to federal claims or state claims in which the state has not waived immunity in state courts. See id.
The fact that the defendants’ removal of this case to federal court may have waived their Eleventh Amendment immunity from suit in federal court with respect to any state law claims for which the state had waived immunity in state court does not necessarily mean they waived their other immunities: sovereign immunity from state law claims for which the state has not waived immunity and qualified immunity from the § 1983 claims against the department officials in their individual capacities. Even if the state waived its Eleventh Amendment immunity, the defendants cannot be sued for money damages under § 1983 because claims against state officials in their official capacities are really suits against the state and a state is not a person for purposes of a claim for money damages under § 1983. Id. at 617, 122 S.Ct. 1640; see also, e.g., Will v. Mich. Dep’t of State Police, 491 U.S. 58, 65-66, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). (“The Eleventh Amendment bars ... suits [against States for alleged deprivations of civil liberties] unless the State has waived its immunity:... [A] suit against a state official in his or her official capacity ... is no different from a suit against the State itself.”). To the extent Kruger attempts to appeal the dismissal of his § 1983 damage claims against the state and the department officials in their official capacities, we affirm the district court’s .dismissal of these claims.
2. Section 1983 Claims — Department Officials’ Individual Capacities
Kruger next contends “the individual defendants did not have qualified *302 immunity [from Kruger’s § 1983 claims] in their personal capacities.”[5]
An official sued under § 1983 is entitled to qualified immunity unless it is shown that the official violated a statutory or constitutional right that was “clearly established” at the time of the challenged conduct.... [A] defendant cannot be said to have violated a clearly established right unless the right’s contours were sufficiently definite that any reasonable official in the defendant’s shoes would have understood that he was violating it.
Plumhoff v. Rickard, 572 U.S. -, -, 134 S.Ct. 2012, 2023, 188 L.Ed.2d 1056 (2014) (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 735, 131 S.Ct. 2074, 2080, 179 L.Ed.2d 1149 (2011)). Kruger claims he met this test because “[a]t this stage of the proceedings, all allegations in the Second Amended Complaint must be taken as true. Kruger pled that [Andrea] had the constitutional right to freely associate and travel about the City of Omaha, and to not be deprived of that liberty interest by State actions.”
As the district court explained, this is incorrect. Although the facts alleged in the complaint must be taken as true at this stage of the proceedings, they still must plausibly state a claim for relief. See Bell Atl. Corp., 550 U.S. at 555-56, 127 S.Ct. 1955. The district court was not required to take as true the dubious legal conclusions that there are constitutional rights to “freely associate and travel about the City of Omaha” which are “ ‘clearly established’ ” and of which “any reasonable official” would have been aware. Plumhoff, 572 U.S. at -, 134 S.Ct. at 2023 (quoting al-Kidd, 563 U.S. at 731, 131 S.Ct. at 2074).
Kruger proclaims “the State had a duty to the public at large to not release a known and violent criminal.” In fact, “there is no general substantive due process right to be protected against the release of criminals from confinement, even if that release violates state law.” Lovins v. Lee, 53 F.3d 1208, 1209 (11th Cir.1995). Kruger’s proclaimed duty is not clearly established.
There are two exceptions, neither of which applies here. First, the special relationship exception applies to limited circumstances where “the Constitution imposes upon the State affirmative duties of care and protection with respect to particular individuals.” DeShaney v. Winnebago Cty. Dept of Soc. Servs., 489 U.S. 189, 197-99, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989) (emphasis added). This includes the duty “to provide adequate medical care to incarcerated prisoners” and “to provide involuntarily committed mental patients with such services as are necessary to ensure their ‘reasonable safety’ from themselves and others.” Id. at 198-99, 109 S.Ct. 998 (quoting Youngberg v. Romeo, 457 U.S. 307, 324, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982)). DeShaney illustrates the narrow reach of this exception. See id. There, the Supreme Court rejected a § 1983 claim by a boy who alleged the county social services department knew he had been hospitalized repeatedly for suspicious injuries but took no action to protect him from his abusive father, Id. at 191— 94, 109 S.Ct. 998. In that case, the Supreme Court reasoned,
*303 nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors. The Clause is phrased as a limitation on .the State’s power to act, not as a guarantee of certain minimal levels of safety and security.
Id. at 195, 109 S.Ct. 998.
The second exception is “the state-created-danger” exception. This exception would apply if Kruger showed:
(1) that [Andrea], was a .member ¡of “a limited, precisely definable group,” (2) that the [defendants’] conduct put her at a “significant risk-of serious, immediate, and proximate harm,” (3) that the risk was “obvious or known” to the [defendants], (4) that the [defendants] “acted recklessly in conscious disregard of . the risk,” and (5) that in total, the [defendants’] conduct “shocks the conscience.”
See Fields v. Abbott, 652 F.3d 886, 891 (8th Cir.2011) (quoting Hart v. City of Little Rock, 432 F.3d 801, 805 (8th Cir.2005)). The district court found this exception did not apply because “Andrea was. not a member of a limited, precisely definable group.” Id. We. agree with the district court’s conclusion that “Membership in the general public” does not suffice.
Kruger asks us to “reconsider the state-created-danger doctrine,” citing our decision in Freeman v. Ferguson, which , involved a § 1983 claim by the estate of a mother and daughter who were murdered by the mother’s estranged husband, despite an active restraining order. See Freeman v. Ferguson, 911 F.2d 52, 53-54 (8th Cir.1990). In that case, the police allegedly did not respond to the victims’ reports of harassment because the police chief was friends with the perpetrator. Id, at 53-54.. We reversed the district court’s order granting a motion to dismiss to give the administrator of the decedents’ estates “an opportunity to attempt to amend her complaint” in light of the DeShaney opinion, which had been, announced only the day before the motion to dismiss was granted. Id. at 54. Wé pondered whether the .analysis in DeShaney “established] the possibility that a constitutional duty to protect an individual against private violence may exist in a non-custodial setting if the state has taken affirmative action which' increases the individual’s danger of, or vulnerability to, such violence beyond the level it would have been at absent state action.” Id. at 55.
The allegation here that the defendants increased the danger to the general public distinguishes this case from Freeman. See, e.g., Davis v. Fulton County, 90 F.3d 1346, 1351-52 (8th Cir.1996) (determining that duty jailer did not create a danger particular to an elderly shopkeeper who worked near the jail when the jailer permitted a pretrial detainee to go outside the jail to perform chores and the detainee raped the shopkeeper). In Freeman, the police allegedly deliberately ignored reports from two individuals who reported a danger from domestic -violence that was specific to them. Freeman, 911 F.2d at 53-55. Freeman does- not require we reverse the district court’s order granting the defendants’ motion to dismiss Kruger’s § 1983 claims against the department officials in their individual capacities.
B. State Law Negligence Claims
1. Negligence Claims — Department Officials’ Individual Capacities
Kruger seems to have abandoned his state law claims against the department officials in their individual capacities. The district court correctly dismissed these claims because the department officials’ actions were taken while they were acting in the scope of their employment, a fact Kruger himself pled. The STCA lim *304 its Kruger to proceeding against the department officials in their official capacities. See Bohl, 557 N.W.2d at 673; Neb. Rev.Stat. § 81-8,210(4).
2. Negligence Claims — Department Officials’ Official Capacities
a. STCA Discretionary Function Exception
The district court, dismissed Kruger’s state law claims against the department officials in their official capacities upon concluding they did not fall within the STCA’s limited sovereign immunity waiver. See Neb.Rev.Stat. § 81-8,219(1). The district court followed the defendants’ arguments that Kruger did not allege the department officials “had no discretion (1) in failing to grant or withhold Jenkins’ good time credits, or (2) in declining to pursue a civil commitment of Jenkins.”
The discretionary function provision of the STCA provides:
The, State Tort Claims Act shall not apply to ... [a]ny claim based upon an act or omission of an employee of the state, exercising due care, in the execution of a statute, rule, or regulation ,.. or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the. part of a state agency or an employee of the state, whether or not the discretion is abused.
Neb.Rev.Stat. § 81-8,219(1) (emphasis added). “[Protected under the [STCA] ... is the discretion of a governmental executive or administrator to act according to one’s judgment of the best course to be taken_. [Discretion includes more than the initiation of programs and. activities” and “includes determinations or judgments made in establishing plans, specifications, or schedules of operations.” Jasa ex rel. Jasa v. Douglas County, 244 Neb. 944, 510 N.W.2d 281, 288 (1994).
The discretionary function exception “extends only to the basic policy decisions made in governmental activity, and not to ministerial activities implementing such policy decisions.... [T]he state is liable for negligence of its employees at the operational level, where there is no room for policy judgment.” Id. Distinguishing a ministerial from a discretionary function involves a two-step inquiry. Id. at 289, First, does the conduct “involve[ ] an element of judgment or choice” or does a “statute, regulation, or policy specifically prescribe[ ] a course of action for an employee to follow”? Id. Second, if “the challenged conduct involves an element of judgment” is it “the kind that the discretionary function exception was designed to shield”? Id.
i. Discharge Date Calculation
The: district court concluded the department officials’ calculation of Jenkins’s release date was a discretionary function because Nebraska statute § 83-1,107 provides that good time[6] “may be forfeited, withheld, arid restored by the chief executive officer of the facility with the approval of the director after the offender has been notified regarding the charges of misconduct.” Neb.Rev.Stat. § 83-1,107(3). The district court, relying on Jasa, 510 N.W.2d at 291-92, decided the use of the word “may” indicated that decisions about .good time were discretionary and therefore the department officials were immune.
On appeal, Kruger asserts his claim should not have been dismissed be *305 cause he pled the defendants made an arithmetical error in calculating Jenkins’s release date, which is a non-discretionary function. Kruger argues he. alleged a mathematical error by pleading. that the state “failed to properly, calculate and/or apply ‘good' time.’” Kruger maintains “a defendant must serve the mandatory mini-um [sic] sentence plus of the remaining minimum sentence before becoming eligible for parole.” See State v. Kinser, 283 Neb. 560, 811 N.W.2d 227, 234 (2012) (declaring “good time credit would not reduce the ,.. mandatory minimum portion of [the defendant’s] sentence”)., “[G]ood time credit applies only ■ after the mandatory minimum has been served” in part because the good time statute was intended “to ensure that no one would reach mandatory discharge before reaching parole eligibility.” State v. Castillas, 285 Neb. 174, 826 N.W.2d 255, 267 (2013), disapproved on other grounds, State v. Lantz, 290 Neb. 757, 861 N.W.2d 728, 732-33 (2015). Jenkins may have been released too early in violation, of the Nebraska Supreme Court directive in Castillas.[7] See id. However, it is impossible to determine based, on the facts Kruger pled. His complaint alleged:
While Jenkins had been sentenced to serve 21 years for his crimes, he was released from prison after serving 10 and % years. The State of Nebraska failed to properly calculate and/or apply “good time” for Jenkins in ordering his release on July 30,2013.
Kruger did not plead (1) what crimes Jenkins was convicted of,. (2) whether those crimes carried mandatory minimum sentences, (3) what those sentences were, or (4) when Jenkins should have been eligible for release. Without this information, there is no way to evaluate the plausibility of whether a mathematical error occurred. Even if Kruger is correct in asserting that the discretionary function exception does not apply to mathematical sentence calculations, we conclude Kruger failed to plead facts stating a plausible claim for relief. See Bell Atl. Corp., 550 U.S. at 555-56,127 S.Ct. 1955.
ii. Psychiatric Report and Civil Commitment Decisions
Second, the district court determined the decision not to seek civil commitment for Jenkins was a discretionary function, citing Nebraska law providing:
Any person who believes that another person is mentally ill and dangerous may communicate such belief to the county attorney_If the* county attorney concurs that such person' is mentally ill and dangerous and that neither voluntary hospitalization nor other treatment alternatives less restrictive of the subject’s liberty than inpatient or outpatient treatment ordered by a mental health board is available or would suffice to prevent the harm described in section 71-908, he or she shall file a petition as provided in this section.. .
Neb.Rev.Stat. § 71-921(1) (emphasis added).
On appeal, Kruger asserts the department officials had a mandatory duty to provide Dr. Baker’s psychiatric evaluation of Jenkins to the Johnson County Attorney and the Public Counsel, thus making this duty a non-discretionary function. Kruger’s argument that the department officials had a mandatory duty to provide the report to the county attorney is. foreclosed by Holloway v. State, 875 N.W.2d 435, *306 443-48, 293 Neb. 12, 20-26 (Neb.2016), in which the Nebraska Supreme Court determined the discretionary function exception applies to “[t]he decision whether to report to the county attorney that another person is thought to be mentally ill and dangerous.”
Kruger also proposes “[t]he State had a mandatory legal duty to turn over Dr. Baker’s psychiatric report” to the Public Counsel. Nebraska Statute section 81-8,245(4) does provide the Public Counsel with “the power to ... [r]equest and receive from each administrative agency ... the assistance and information the counsel deems necessary for the discharge of his or her responsibilities” and declares the “agency shall provide” such assistance and information. (Emphasis added). The statute also grants the Public Counsel authority to “inspect and examine the records and documents of all administrative agencies notwithstanding any other provision of law.” Id.
Kruger briefly mentions section § 81-8,245(4) only in his reply brief, so he has waived his argument based on that provision. See, e.g., Mahaney v. Warren County, 206 F.3d 770, 771 n. 2 (8th Cir.2000) (per curiam) (“Claims not raised in an initial brief are waived, and we generally do not consider issues raised for the first time on appeal in a reply brief.”). Even if Kruger’s cursory reference to section 81-8,245(4) were sufficient to raise the argument that the defendants had a non-discretionary duty to provide Dr. Baker’s report to the Public Counsel upon the Public Counsel’s request for documents, Kruger did not allege the Public Counsel ever made such a request. Consequently, Kruger did not plead facts that plausibly could support this proposition. See Bell Atl. Corp., 550 U.S. at 555-56, 127 S.Ct. 1955.
b. Due Care Exception
Alternatively, Kruger suggests that even if the defendants’ actions were discretionary functions, the discretionary function exception does not apply because it only applies to discretionary functions carried out with due care. See Doe v. Omaha Pub. Sch. Dist., 273 Neb. 79, 727 N.W.2d 447, 458 (2007) (recognizing the existence of a statutory due care exception under Neb.Rev.Stat. § 13-910). We do not decide this issue because Kruger did not raise it before the district court. See, e.g., Shanklin v. Fitzgerald, 397 F.3d 596, 601 (8th Cir.2005) (“Absent exceptional circumstances, we cannot consider issues not raised in the district court.”).
III. CONCLUSION
The judgment of the district court is affirmed.

. The Honorable Lyle E. Strom, United States District Judge for the District of Nebraska.

. The district court referenced Rule 12(b)(3), a venue clause; however, we believe the district court meant Rule 12(b)(1).

. We have jurisdiction pursuant to 28 U.S.C. § 1291.

.Because this appeal arises from dismissals under Federal Rule of Civil Procedure 12(b)(1), (6), we take our “facts” from Kruger’s complaint allegations to determine if Kruger has alleged' "enough facts to state a claim to relief that is plausible on its face.” Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); see also Ashcroft v. Iqbal, 556 U.S. 662, 677-79, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

. In his reply brief, Kruger briefly mentions "[s]ince Defendants have failed to file an Answer with respect to [their qualified-immunity] claims, the Court was premature in dismissing the Complaint,” We do not consider this argument because Kruger did not raise it in his opening brief. See Barham v. Reliance Standard Life Ins. Co., 441 F.3d 581, 584 (8th Cir.2006).

. “Good time means any reduction of sentence granted pursuant to sections 83-1,107 and 83-1,108,” which includes automatic reductions and reductions for good behavior. Neb.Rev.Stat §§ 83-170, 83-1,107, 83-1,108.

. This problem was not unique to Jenkins. A special investigative committee reported that over 300 inmates were released too early because the department failed to comply with the Castillas decision. See Nebraska Department of Correctional Services Special Investigative Committee Report to the Legislature 46-51 (Dec. 15, 2014).