# United States Court of Appeals

## For the Eighth Circuit

_____

No. 15-2617

_____

Katie Moore, as Next Friend on behalf of D.S., a minor

*Plaintiff - Appellant*

v.

Kansas City Public Schools, also known as Kansas City Public School District;
Southwest Early College Campus, also known as Southwest High School; Dr. R.
Stephen Green, individually and as Superintendent of Kansas City Public Schools;
Dr. Edwin Richardson, individually and as Principal of Southwest Early College
Campus; Cecil Annette Billups, individually and as a Special Education Teacher at
Southwest Early College Campus; Alice Coody, individually and as a Special
Education Teacher at Southwest Early College Campus

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: February 10, 2016
Filed: July 7, 2016

_____

Before RILEY, Chief Judge, LOKEN and BENTON, Circuit Judges.

_____

RILEY, Chief Judge.

On behalf of D.S., a minor student with intellectual disabilities, Katie Moore sued Kansas City Public Schools (school district), Southwest Early College Campus (Southwest), the superintendent of the school district, the principal of Southwest, a special education teacher, and a para-professional at Southwest (collectively, defendants) in Missouri state court. The petition sought damages for premises liability and negligent supervision because D.S. was raped by another student in an unsupervised area of Southwest during the school day, and because D.S. was repeatedly bullied and sexually harassed by her classmates and peers. The school district and Southwest removed the lawsuit to the Western District of Missouri, see 28 U.S.C. § 1441(a), claiming Moore's causes of action arose under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 et seq., and then moved to dismiss under Federal Rule of Civil Procedure 12(b)(1) and (6). The district court denied Moore's motion to remand and then dismissed the lawsuit for failure to exhaust IDEA administrative remedies. We now reverse.[1]

## I.    BACKGROUND[2]

D.S. was a special education student at Southwest during the 2013-14 school year. Due to her intellectual and learning disabilities at the time relevant to the complaint, D.S. sometimes had trouble communicating and spoke in "baby talk." D.S. also had difficulty perceiving danger and was "susceptible to suggestion due to her significant intellectual and learning disabilities." When D.S. became frustrated, she tended to wander away. To accommodate her disability, D.S. had an "individualized

---

[1]We have jurisdiction under 28 U.S.C. § 1291.

[2]As Moore's appeal arises from a dismissal under Fed. R. Civ. P. 12(b)(6), we recite the facts as Moore pled in state court, accepting as true all factual allegations in the petition. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Kruger v. Nebraska, 820 F.3d 295, 299 n.4 (8th Cir. 2016).

education program" (IEP)[3] under the IDEA put into place by the school district. See 20 U.S.C. §§ 1401(14), 1414(d)(1)(A)(i). D.S.'s IEP stated her attendance required improvement.

Although Southwest is equipped for up to 2,500 students, only about 600 attended the school during the 2013-14 school year. Because attendance was so below capacity, not all areas of the school were in use. Unused areas were unsupervised and supposed to be locked, and students were forbidden to enter. In August 2013, two students gained access to a locked area and allegedly raped a female student, leading the Kansas City Police Department to investigate the incident.

At school, D.S. was relentlessly bullied and harassed by her peers. Some of the harassment included "yelling at D.S. and telling her she was ugly"; "putting their hands under D.S.'s shirt, touching her 'boobs'"; and "slapping D.S. in the face." D.S. told her teachers about the harassment, but the defendants "failed to take sufficient measures to correct the[] issues." In March 2014, D.S. was sexually assaulted on at least three occasions by the same student, "under the same or similar circumstances as the August 2013 rape," in one of the locked areas at Southwest. D.S. did not report these specific instances because her assailant threatened to kill her if she told anyone.

On April 1, 2014, around 10:44 a.m., a para-professional assigned to D.S.'s classroom watched D.S. leave the lunchroom and enter a hallway before the end of the period. Sometime between then and 2 p.m. that day, two students led D.S. through a set of unsecured doors, where a male student raped her while another female student acted as a "look-out." The para-professional reported to a special education coordinator that D.S. was missing. D.S. never returned to class that day, and the Southwest security staff never made a record she was missing.

---

[3]Moore refers to D.S.'s IEP as her "Individual Education Plan."

Around 2:00 a.m. the next morning, D.S. told her parents she was experiencing vaginal and anal pain. D.S. was taken to Children's Mercy Hospital, where it was confirmed D.S. had been vaginally and anally raped. Since the assaults, "D.S. has been diagnosed with numerous serious physical, social, mental, and emotional disorders that have further decreased D.S.'s ability to function independently and age-appropriately."

Moore brought this petition for damages in the Circuit Court of Jackson County, Missouri. Moore's petition set out two causes of action under Missouri law. Count I charged the school district and Southwest with premises liability, alleging the school district and Southwest "exposed their students to dangerous physical defects and conditions on the [Southwest] premises." See Mo. Rev. Stat. § 537.600.1(2) (waiving sovereign immunity). According to the petition, Southwest was "kept in an unsafe and dangerous condition, including but not limited to the physical defects with missing or broken locks on doors providing ingress and egress to 'secure' areas, including the areas where D.S. was sexually assaulted." Count II asserted liability for negligent supervision against all defendants. Moore alleged the defendants "knew or should have known that a culture of bullying, discrimination, sexual assault, and sexual harassment existed at [Southwest]" and defendants "breached their ministerial duty to D.S." by failing to report and properly address physical and sexual abuse at Southwest. See Mo. Rev. Stat. § 210.115.1 (requiring teachers and school officials to report abuse).

Claiming Moore's causes of action arose under the IDEA, the school district and Southwest timely filed a notice of removal to federal court[4], see 28 U.S.C. §§ 1441(a), 1446(a), and subsequently moved to dismiss, see Fed. R. Civ. P. 12(b)(1), (6). Asserting the district court should consider "'the substance of the complaint, not

_____

[4]The individual defendants later consented to removal and joined the school district and Southwest's motion to dismiss.

-4-

the labels used in it'" (quoting In re Carter, 618 F.2d 1093, 1101 (5th Cir. 1980)), the defendants argued that while Moore's petition "style[d] her causes of action on theories of premises liability and negligence pursuant to Missouri common law, her Petition substantively state[d] a claim under the [IDEA]." Pointing to the petition's references to D.S.'s IEP, the defendants claimed Moore "repackaged a federal IDEA claim . . . in an attempt to avoid the federally mandated IDEA requirements and procedure." Moore moved for remand to Missouri state court. The district court denied remand and granted the defendants' motion to dismiss. Moore appeals. She also requests that we award her attorney fees. See 28 U.S.C. § 1447(c).

## II.   DISCUSSION

The district court accepted the defendants' argument in favor of removal, characterizing Moore's state law claims as "not 'wholly unrelated' to the IEP process" (quoting M.P. ex rel. K. & D.P. v. Indep. Sch. Dist. No. 721, 439 F.3d 865, 868 (8th Cir. 2006)). See also J.B. ex rel. Bailey v. Avilla R-XIII Sch. Dist., 721 F.3d 588, 593 (8th Cir. 2013). The district court also emphasized that some of D.S.'s injuries that may require psychological treatment or counseling "could potentially be redressed under the IDEA." The district court decided it had "original federal question jurisdiction" over the action because the petition "directly implicates, and seeks redress available under, the IDEA." Moore maintains she did not plead a cause of action under the IDEA. We review the district court's order denying remand de novo. See Cent. Iowa Power Coop. v. Midwest Indep. Transmission Sys. Operator, Inc., 561 F.3d 904, 911-12 (8th Cir. 2009).

In deciding whether Moore's petition presents a federal question, we begin by applying the well-pled complaint rule. See Caterpillar Inc. v. Williams, 482 U.S. 386, 392-93 (1987). This long-standing doctrine "provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." Id. at 392. "[T]he question is, does a state-law claim necessarily

raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 314 (2005); accord Franchise Tax Bd. v. Constr. Laborers Vacation Tr. for S. Cal., 463 U.S. 1, 13 (1983). The proponents of federal jurisdiction bear "the burden to establish federal subject matter jurisdiction," and "all doubts about federal jurisdiction must be resolved in favor of remand." Cent. Iowa Power, 561 F.3d at 912. "[T]he plaintiff is master of his claim and may avoid federal removal jurisdiction by exclusive reliance on state law." M. Nahas & Co., Inc. v. First Nat'l Bank of Hot Springs, 930 F.2d 608, 611 (8th Cir. 1991).

On its face, Moore's petition does not expressly invoke relief under the IDEA, which guarantees students with disabilities access to a free, appropriate education and "ensure[s] that the rights of children with disabilities and parents of such children are protected." 20 U.S.C. § 1400(d)(1)(A), (B); see also Winkelman ex rel. Winkelman v. Parma City Sch. Dist., 550 U.S. 516, 523-24 (2007) (discussing the IDEA's purposes). Although Moore's petition raises state law claims, the defendants contend Moore's premises liability and negligent supervision claims are steeped in alleged violations of the IDEA and the petition's allegations raise substantial questions of federal law. See M. Nahas & Co., 930 F.2d at 612 (explaining a plaintiff cannot mistakenly or fraudulently avoid federal jurisdiction by "concealing the federal question that would necessarily have appeared if the complaint had been well pleaded").

While overstated, the defendants' reading of Moore's petition is not completely without support. Moore makes references to D.S.'s IEP—that D.S.'s IEP failed to set forth goals on how to improve D.S.'s attendance, and that the defendants failed to address in D.S.'s IEP her tendency to wander, vulnerability to suggestion, and sexual abuse. But these few references do not convince us that the propriety of D.S.'s IEP

is the "central dispute of this litigation," as the defendants suggest, or that any matter relating to D.S.'s disability and education raises issues concerning the "educational placement" of D.S., thereby implicating the IDEA.

Considering these IEP references in context—appearing in a small number of paragraphs in the twenty-page petition—Moore's claims "implicate" the IDEA only in the sense that D.S., as a special education student, had an IEP the defendants were required to administer. See 28 U.S.C. § 1414(d). According to Moore, D.S.'s IEP "was mentioned in the pleadings solely to show notice to the [school district] of the conditions that put D.S. at risk from other students," including D.S.'s "special vulnerabilities." The gravamen of the petition is a state law action for damages seeking redress for the brutal injuries D.S. suffered as the result of repeated sexual assault and rape while under Southwest's supervision. The petition did not request any change or amendment to D.S.'s IEP or educational placement, and the state law claims do not rely on the IDEA or the rights it creates and protects. See, e.g., MCI Telecomms. Corp., 981 F.2d at 387; M.P., 439 F.3d at 868 (explaining the "IEP process" involves "individual identification, evaluation, educational placement, and free, appropriate education (FAPE) decisions"); Evergreen Sch. Dist. v. N.F., 393 F. Supp. 2d 1070, 1074 (W.D. Wash. 2005). Rather, the petition's theories of liability arise out of Missouri statutory and common law, and the disposition of claims for premises liability and negligent supervision is not "'depend[ent] on resolution of a substantial question of federal law.'" Biscanin v. Merrill Lynch & Co., Inc., 407 F.3d 905, 906 (8th Cir. 2005) (quoting Franchise Tax Bd., 463 U.S. at 28).

The defendants isolate certain phrases in Moore's petition, arguing they "plainly seek relief that is available under the IDEA." Specifically, the defendants—as did the district court—point to the request for damages due to D.S.'s suffering of "'emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, loss of enjoyment of life, and other economic damages including but not

limited to expenses for past and *future medical and psychological treatment, therapy and counseling*.'" (Emphasis added by defendants). Moore did not request counseling from Southwest or the school district or otherwise through her IEP. This paragraph of the petition merely explains how an overall award of damages, as "any person who has been subjected to rape might demand," will assist in D.S.'s recovery. Cf. Covington v. Knox Cty. Sch. Sys., 205 F.3d 912, 917-18 (6th Cir. 2000) (stating where a special education student's injuries were "wholly in the past, . . . money damages"—not remedies available under the IDEA—were "the only remedy that [could] make him whole"). The IDEA does not provide general compensatory or punitive damages. See Birmingham v. Omaha Sch. Dist., 220 F.3d 850, 856 (8th Cir. 2000). Notwithstanding defendants' suggestions to the contrary, this is not a case where Moore has "merely . . . tack[ed] on a request for money damages" to evade the requirements of bringing a claim under the IDEA, see Polera v. Bd. of Educ. of the Newburgh Enlarged City Sch. Dist., 288 F.3d 478, 487 (2d Cir. 2002), or where "the genesis and the manifestations of the problem are educational," cf. Charlie F. by Neil F. v. Bd. of Educ. of Skokie Sch. Dist. 68, 98 F.3d 989, 993 (7th Cir. 1996). Even if the relief Moore requested were available under both state law and the IDEA, the well-pled complaint rule protects Moore's "right to choose a state law cause of action." Alexander v. Elec. Data Sys. Corp., 13 F.3d 940, 943 (6th Cir. 1994).

The defendants also propose the IDEA's exhaustion requirement, 20 U.S.C. § 1415(*l*), should apply to Moore's state law claims, and she must pursue her grievances through the IDEA's administrative procedures before she can continue this action. Under § 1415(*l*), if relief sought under the "Constitution, the Americans with Disabilities Act of 1990 . . ., title V of the Rehabilitation Act of 1973 . . . , or other Federal laws protecting the rights of children with disabilities," a claimant is required to exhaust administrative remedies under the IDEA before pursuing that relief. See, e.g., J.B., 721 F.3d at 591-92 (requiring a claimant to exhaust administrative remedies under the IDEA before pursuing violations of the Americans with Disabilities Act and

section 504 of the Rehabilitation Act). Moore did not allege a violation of the Constitution, the IDEA, one of the three statutes enumerated in § 1415(*l*), or any other federal statute. Section 1415(*l*) does not encompass common law or state law claims in its exhaustion realm. "No authority holds that Congress meant to funnel isolated incidents of common law torts into the IDEA exhaustion regime," Muskrat v. Deer Creek Pub. Sch., 715 F.3d 775, 785 (10th Cir. 2013), and we carefully avoid disrupting the IDEA's model of "cooperative federalism," Schaffer ex rel. Schaffer v. Weast, 546 U.S. 49, 52 (2005) (quotation omitted). We agree with the Ninth Circuit that "[n]on–IDEA claims that do not seek relief available under the IDEA are not subject to the exhaustion requirement, even if they allege injuries that could conceivably have been redressed by the IDEA." Payne v. Peninsula Sch. Dist., 653 F.3d 863, 871 (9th Cir. 2011) (en banc), overruled on other grounds by Albino v. Baca, 747 F.3d 1162, 1166, 1171 (9th Cir. 2014) (en banc).[5]

Moore has requested an award of attorney fees, 28 U.S.C. § 1447(c), because the defendants "lacked an objectively reasonable basis for seeking removal." See Martin v. Franklin Capital Corp., 546 U.S. 132, 136 (2005) (holding "absent unusual circumstances, attorney's fees should not be awarded when the removing party has an objectively reasonable basis for removal"). The petition's few references to the implementation of D.S.'s IEP made for a colorable argument that the case presented a federal question under the IDEA. We conclude the defendants were not without a

---

[5]The United States Supreme Court recently granted certiorari to review a Sixth Circuit decision involving similar issues under the IDEA. See Fry v. Napoleon Cmty. Sch., 788 F.3d 622 (6th Cir. 2015), cert. granted, ___ U.S. ___, ___ S. Ct.___, 84 U.S.L.W. 3226 (2016). The question presented in Fry is whether § 1415(*l*) requires exhaustion of state administrative remedies before pursuing a claim seeking damages under the Americans with Disabilities Act and Rehabilitation Act. See id. at 624-25. Because Moore's claims here are based solely on state law, we are satisfied any future decision in Fry will not change the outcome of this case.

reasonable basis to remove the action, and we deny Moore's request for attorney fees. See Paul v. Kaiser Found. Health Plan of Ohio, 701 F.3d 514, 523 (6th Cir. 2012).

## III.   CONCLUSION

The defendants have failed to satisfy their burden of establishing federal jurisdiction. See Cent. Iowa Power, 561 F.3d at 912 (favoring remand). We reverse the district court's judgment with instructions to remand this case to the Missouri state court from which the action was removed. See 28 U.S.C. § 1447(c); see also Wallace v. ConAgra Foods, Inc., 747 F.3d 1025, 1033 (8th Cir. 2014).

_____